**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re )<br><br>DANA CORPORATION, et al., )<br><br>　　　　　　　　Debtors, )<br><br>THE AD HOC COMMITTEE OF )<br>ASBESTOS PERSONAL INJURY )<br>CLAIMANTS, )<br><br>　　　　　　　　Appellants. ) | 1:08-cv-01037 (PAC) |

**BRIEF OF APPELLANT**
**THE AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY**
**CLAIMANTS**

Douglas T. Tabachnik (DT 6337)
**LAW OFFICES OF DOUGLAS T.**
**TABACHNIK, P.C.**
Suite C
Woodhull House
63 West Main Street
Freehold, New Jersey 07728
Telephone:  (732) 792-2760
Facsimile:  (732) 792-2761

and

**STUTZMAN, BROMBERG,**
**ESSERMAN & PLIFKA,**
A Professional Corporation
Sander L. Esserman (SE0356)*
Robert T. Brousseau (RB 4873)*
Jo E. Hartwick (JH 4109)*
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

*Application for admission pro hac vice to be submitted.

# I.
# TABLE OF CONTENTS

II) TABLE OF AUTHORITIES .................................................................iii

III) STATEMENT OF APPELLATE JURISDICTION ............................................1

IV) STATEMENT OF ISSUES PRESENTED AND APPLICABLE
    STANDARDS OF REVIEW .................................................................1

V) STATEMENT OF THE CASE AND THE FACTS ............................................3

    A. STATEMENT OF CASE .................................................................3

    B. STATEMENT OF THE FACTS .................................................................3

        1. The Debtors file for bankruptcy and propose a plan of
           reorganization. .................................................................3

        2. Dana enters into Undisclosed Settlements with
           Certain Class 3 Asbestos Creditors and their
           Lawyers in the Eve of Confirmation. .......................................4

        3. The Ad Hoc Committee Objects to the Plan. ..........................5

        4. The Confirmation Hearing. .................................................5

VI) SUMMARY OF ARGUMENT .................................................................5

VII) ARGUMENT .................................................................7

    A. The Bankruptcy Court Erred in Confirming a Plan
    that Denied Asbestos Personal Injury Claims the Right
    to Vote by Improperly Characterizing Them as
    "Unimpaired" by a Plan That Sanctions A Wholesale
    Asset Stripping of the Debtor. .................................................7

i

**1. Any alteration of a claimant's rights is an impairment.**................................................................**7**

**2. The Plan impairs asbestos personal injury claims**................................................................**9**

**B. The Bankruptcy Court Erred in Confirming a Plan that Creates a Two-Entity Structure That Channels Asbestos Personal Injury Claims to One Underfunded Entity, While Effectively Immunizing the Remaining Operating Entity from Asbestos Claims.**...........................**14**

**C. The Bankruptcy Court Erred in Confirming a Plan that Provides a Mechanism for Treating Future Asbestos Personal Injury Claims without Complying with 11 U.S.C. §524(g).**...........................**18**

**D. The Bankruptcy Court Erred in Confirming a Plan that Provides Different Treatment to Claims in the Same Class**................................................................**20**

**E. The Bankruptcy Court Erred in Confirming the Plan Because it Classified Asbestos Personal Injury Claims Separately from Other General unsecured Claim and Other Tort Claims.**................................**23**

**F. The Bankruptcy Court Erred in Confirming a Plan That Is Not Feasible under 11 U.S.C. § 1129(a)(11).**...........................**24**

**VIII) CONCLUSION**................................................................**25**

II.
## TABLE OF AUTHORITIES

Page

**A. CASES**

*In re Adelphia Commuc'ns Corp.,*
371 B.R. 660 (S.D.N.Y. 2007) ............................................................ 2

*In re Adelphia Commuc'ns Corp.,*
361 B.R. 337 (S.D.N.Y. 2007) ............................................................ 20, 21, 22

*In re Am. Hardwoods, Inc.,*
855 F.2d 621 (9th Cir. 1989) ............................................................ 17

*In re Atlanta-Stewart Partners,*
193 B.R. 79 (Bankr. N.D. Ga. 1996) ............................................................ 9

*In re B & B West 164th Street Corp.,*
147 B.R. 832 (Bankr. E.D.N.Y. 1992) ............................................................ 7, 8

*In re Chateaugay Corp.,*
89 F.3d 942 (2d Cir. 1996) ............................................................ 22

*In re Combustion Eng'g, Inc.,*
391 F.3d 190 (3d Cir. 2005) ............................................................ 16, 17, 18, 19, 20, 21, 22

*In re Danny Thomas Props. II Ltd. P'ship,*
241 F.3d 959 (8th Cir. 2001) ............................................................ 24

*In re Dow Corning Corp.,*
280 F.3d 648 (6th Cir. 2002) ............................................................ 22, 22

<u>Page</u>

*In re Forrest Hills Assocs., Ltd.,*
18 B.R. 104 (Bankr. Del. 1982)............................................................7

*In re G-I Holdings, Inc.,*
328 B.R. 691 (D.N.J. 2005)..............................................................18

*In re Heritage Org., L.L.C.,*
375 B.R. 230 (Bankr. N.D. Tex. 2007)..............................................24

*Kane v. Johns-Manville Corp.*
843 F.2d 636 (2d Cir. 1988)............................................................23

*In re L & J Anaheim Assocs.,*
995 F.2d 940 (9th Cir. 1993)..........................................................7, 8

*In re PPI Enters. (U.S.), Inc.,*
324 F.3d 197 (3d Cir. 2003)..............................................................8

*Prudential Ins. Co. v. Monnier (In re Monnier Bros.),*
755 F.2d 1336 (8th Cir. 1985)........................................................23

*In re Quigley Co., Inc.,*
377 B.R. 110 (Bankr. S.D.N.Y. 2007)........................................20, 22

*Sea Harvest Corp. v. Riviera Land Co.,*
868 F.2d 1077 (9th Cir. 1989)........................................................17

*In re Smith,*
123 B.R. 863 (Bankr. C.D. Cal. 1991)................................................8

*In re Temple Zion,*
125 B.R. 910 (E.D. Pa. 1991)............................................................8

*Variety Corp. v. Howe*
516 U.S. 489 (1996)........................................................................16

## B. STATUTORY PROVISIONS

Page

11 U.S.C. § 524(g) .................................................................... Passim

11 U.S.C. § 1123 (a)(4) .................................................................. 19, 22

11 U.S.C. §1124 ......................................................................... 3, 4, 7

11 U.S.C. § 1129 (a)(11) ................................................................. 23, 24

28 U.S.C. § 158(a)(1) ...................................................................... 1

## C. SECONDARY AUTHORITIES

2 COLLIER ON BANKRUPTCY
¶ 105.04 AT 105 N.5 ..................................................................... 17

## III.
## STATEMENT OF APPELATE JURISDICTION

The Ad Hoc Committee of Asbestos Personal Injury Claimants[1] (the "Ad Hoc Committee") brings this appeal under Title, 28, United States Code, section 158(a)(1), which gives district courts of the United States jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(a)(1). This Court has jurisdiction because this is an appeal from a final order of the bankruptcy court.

## IV.
## STATEMENT OF ISSUES PRESENTED
## AND APPLICABLE STANDARDS OF REVIEW

A.    ISSUES PRESENTED:

1.    Did the Bankruptcy Court err in confirming the Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (the "Plan") notwithstanding the fact that the Plan impaired Class 3 Claims, asbestos personal injury claims, yet denied holders of Class 3 Claims the ability to vote to accept or reject the Plan?

---

[1] The Ad Hoc Committee of Personal Injury Asbestos Claimants consists of James J. Demahy, Individually and as the Independent Executrix of the Estate of Lydia Demahy, deceased, represented by Bryan O. Blevins, Jr., Provost Umphrey Law Firm L.L.P., Beaumont, Texas; Estelle Moore, Personal Representative of the Estate of Royce Wilfred Moore, represented by Russell Budd and Natalie Duncan, Baron & Budd, P.C., Dallas, Texas; John Hellen, Personal Representative of the Estate of Harwood Hellen, deceased, represented by Brent Coon and Lou Thompson Black, Brent Coon & Associates, Beaumont and Houston, Texas and Cleveland, Ohio; Robert Haun, represented by Steven Kazan, Kazan, McClain, Abrams, Lyons & Greenwood, A Professional Law Corporation, Oakland, California; George Winter represented by Al Brayton, Brayton Purcell, Novato and Los Angeles, California, Portland, Oregon, and Salt Lake City, Utah; and Charles Kloock represented by Thomas M. Wilson, Kelley & Ferraro, LLP, Cleveland, Ohio.

1

2.      Did the Bankruptcy Court err in confirming the Plan when the Plan creates a two-entity structure and channels asbestos claims to the lesser-funded entity without the safeguards mandated by 11 U.S.C. § 524(g)?

3.      Did the Bankruptcy Court err in confirming the Plan when the Plan provides the Debtors with some of the protections afforded by 11 U.S.C. § 524(g) without meeting all of the requirements of 11 U.S.C. § 524(g)?

4.      Did the Bankruptcy Court err in confirming the Plan when the Plan does not provide all of the Class 3 Claims with the same treatment?

5.      Did the Bankruptcy Court err in confirming the Plan when the Debtors provided no business reason or other justification for classifying asbestos personal injury claims separately from other general unsecured claims under the Plan?

6.      Did the Bankruptcy Court err in confirming the Plan when the Debtors did not demonstrate that the Plan is feasible under 11 U.S.C. § 1129(a)(11)?

**B.    APPLICABLE STANDARDS OF REVIEW:**

A bankruptcy court's findings of fact are reviewed by this Court for clear error.  *In re Adelphia Commc'ns Corp.*, 371 B.R. 660, 665 (S.D.N.Y. 2007) (appeal of order confirming plan of reorganization filed by official committee of equity security holders).  "A bankruptcy court's conclusions of law, by contrast, are reviewed de novo."  *Id.* (footnote omitted).

## V.
## STATEMENT OF THE CASE AND THE FACTS

### A.    STATEMENT OF CASE

This case is before this Court on appeal from the Bankruptcy Court's Order Confirming Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Doc. No. 7509).

### B.    STATEMENT OF THE FACTS

#### 1.    The Debtors file for bankruptcy and propose a plan of reorganization.

Dana Corporation ("Dana") and forty of its domestic direct and indirect subsidiaries (the "Debtors") filed voluntary petitions for relief under chapter 11, title 11, of the United States Code (the "Bankruptcy Code"). On October 23, 2007, the Debtors filed the Third Amended Disclosure Statement with Respect to Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (the "Disclosure Statement") (Doc. No. 6669) and the Plan (Doc. No. 6671).

The Plan places all asbestos personal injury claims in a separate Class 3, and states that holders of Class 3 claims are "unimpaired" and will be "Reinstated" on the Effective Date.[2]  "Reinstated" and "Reinstatement" are defined in the Plan to mean "rendering a Claim or Interest unimpaired with the meaning of Section 1124 of the Bankruptcy Code.[3]"  The Debtors did not

---

[2] Plan at 25, Article II.B.6.

[3] Plan at 16, Article I.A.164.  Section 1124 provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan —

provide ballots to the holders of Class 3 Claims and those claimants were not permitted to vote on the Plan.

>   **2.    Dana enters into Undisclosed Settlements with Certain Class 3 Asbestos Creditors and their Lawyers on the Eve of Confirmation.**

Three days later, on October 26, 2007, Dana filed a motion to approve its settlement agreements with "Certain Asbestos-Related Personal Injury Claimants" (the "Settlement Motion") (Doc. No. 6724).  These settlement agreements were filed under seal pursuant to an *ex parte* order of the Bankruptcy Court, entered without notice or hearing.  (Doc. Nos. 6693 and 6709).  By order entered November 15, 2007, the Bankruptcy Court overruled the Ad Hoc Committee's objection to the Settlement Motion and approved the Settlement Motion.  (Doc. No. 6929).

---

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default — (A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.  11 U.S.C. § 1124.

### 3. The Ad Hoc Committee Objects to the Plan.

On November 28, 2007, the Ad Hoc Committee filed its Objection to the Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (the "Confirmation Objection") (Doc. No. 7208).

### 4. The Confirmation Hearing

The Bankruptcy Court conducted a three-day hearing on confirmation of the Plan on December 10-12, 2007 (the "Confirmation Hearing"). During the Confirmation Hearing, the Ad Hoc Committee argued that the Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (the "Plan") should not be confirmed for the reasons set forth in the Confirmation Objection.[4] The Ad Hoc Committee introduced its Exhibit #1, Slide 8 of which is attached as Appendix 1 to this Brief. At the conclusion of the Confirmation Hearing, the Bankruptcy Court overruled the Confirmation Objection, and the Confirmation Order was entered on December 26, 2007. (Doc. No. 7509).

## VI.
## SUMMARY OF ARGUMENT

The Bankruptcy Court erred in confirming a Plan that materially alters the rights of holders of Class 3 asbestos personal injury claims, while denying those very claimants their right to vote for or against the Plan. The Plan strips away the most valuable assets of the company, leaving behind

---

[4] Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 48:20-25 – 55:1-9, Dec. 10, 2007 and Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 66:12-25 – 77:1-19, Dec. 12, 2007.

only denuded "old" Dana—a non-operating shell holding mostly environmentally and asbestos-tainted assets. The Plan is trickily engineered so that the Debtor can advance the specious contention that Class 3 Claims are "unimpaired" because they retain ethereal recourse against "old" Dana, this eviscerated ghost of the pre-bankruptcy enterprise. Simultaneously, the Plan moves the profitable operating segments of the pre-bankruptcy company to a new company that is reserved for the benefit of more favored creditors and even shareholders. The Plan thus creates a two-entity structure which permits Dana to direct or "channel" asbestos personal injury claims away from "new" Dana (*i.e.*, the entity now owning the valuable operating assets that had been available to asbestos creditors as of the bankruptcy petition date) and requiring asbestos personal injury claimants to seek recovery, if at all, from "old" Dana's elusive and compromised assets. Adding insult to injury, the Debtors contrived to divert asbestos liability away from the operating company without implementing the safeguards Congress provided in 11 U.S.C. § 524(g) for debtors wishing to isolate their asbestos liabilities in a separate entity. Finally, because of the undisclosed last-minute settlements providing secure and immediate payment to over 7,000 favored Class 3 claimants while leaving most asbestos claimants to seek recovery from a denuded corporate shell, the Plan provides for disparate treatment of holders of Class 3 claims, violating the most basic of bankruptcy principles.

## VII.
## ARGUMENT

**A.   THE BANKRUPTCY COURT ERRED IN CONFIRMING A PLAN THAT DENIED ASBESTOS PERSONAL INJURY CLAIMS THE RIGHT TO VOTE BY IMPROPERLY CHARACTERIZING THEM AS "UNIMPAIRED" BY A PLAN THAT SANCTIONS A WHOLESALE ASSET STRIPPING OF THE DEBTOR.**

If the Plan altered Class 3 asbestos claimants' rights in any way, then holders of such claims were entitled to vote on the Plan.  The Plan provides for a wholesale "restructuring" of the "old" Dana, leaving a comparatively assetless carcass against which the Class 3 Claimants — according to the Debtors — are free to assert their rights.   By this legerdemain, Debtors declare Class 3 Claimants "unimpaired" by the Plan, and thereby contrive to deny them suffrage with respect to the Plan.

### 1.   Any alteration of a claimant's rights is an impairment.

Whether a claim is impaired or unimpaired is a question of law subject to de novo review.  *In re L & J Anaheim Assocs*, 995 F.2d 940, 942 (9th Cir. 1993).  The fact that the Debtors designated the claims of the Ad Hoc Committee's constituents as unimpaired is hardly determinative.   "A statement that a class is not impaired does not necessarily make it so.  A creditor may assert that he is improperly treated as unimpaired." *In re Forrest Hills Assocs, Ltd.*, 18 B.R. 104, 104 (Bankr. D.Del. 1982); *In re B & B West 164th Street Corp.*, 147 B.R. 832, 838 (Bankr. E.D.N.Y. 1992) ("Notwithstanding the Debtor's contentions to the contrary, it is clear that FNB's claims are impaired within the meaning of § 1124(2)(D).").

In fact, the Bankruptcy Code creates a presumption of impairment. *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 203 (3d Cir. 2003). "Courts have consistently interpreted the term 'impairment' very broadly; and the great weight of authority and reason lead [ ] to the conclusion that if a plan alters *any* of a claimant's rights *in any respect*, a plan does not leave that claim 'unimpaired.'" *In re Smith*, 123 B.R. 863, 866 (Bankr. C.D. Cal. 1991) (court found impairment even though plan left creditor the right to proceed on its claim in state court after confirmation) (emphasis in original); *In re L & J Anaheim Assocs.*, 995 F.2d at 942 ("Congress define[d] impairment in the broadest possible terms."); *In re B & B West 164th Street Corp.*, 147 B.R. at 838  (where plan would (i) extend maturity date of obligation by three years, (ii) change the contract rate of interest from a floating rate on the secured portion to a flat 9% per annum, and (iii) pay interest on unsecured portion at 3% per annum with no provision for curing of the arrearages or the reinstatement of the note, claim was clearly impaired).

Even where a claim is paid in full or where the creditor's rights are arguably enhanced, any alteration in the creditor's rights constitutes an impairment of that creditor's claim.  As stated by one bankruptcy court:

> It is clearly established, with respect to impairment that, "if a plan alters the legal, equitable or contractual rights of a class by improving the rights, *the class is impaired even though the economic interest of the class is improved . . .*"

*In re Temple Zion*, 125 B.R. 910, 919 (E.D. Pa. 1991); *see also, In re PPI Enters. (U.S.), Inc.*, 324 F.3d at 206-07 (a claim paid in full must also receive

postpetition interest to qualify as unimpaired); *In re Atlanta-Stewart Partners*, 193 B.R. 79, 81-82 (Bankr. N.D. Ga. 1996) (creditor receiving payment in full upon effective date is impaired).

### 2.    The Plan impairs asbestos personal injury claims.

Notwithstanding Debtors' protestations, confirmation of the Plan drastically alters the rights of holders of Class 3 claims.  Prior to this bankruptcy, asbestos personal injury claimants with judgments against or settlement agreements with Dana could seek to satisfy such judgments or collect from a richly endowed Dana, a company owning dozens upon dozens of subsidiaries with tangible and valuable assets.  All assets were controlled by Dana itself, the defendant against whom the Class 3 asbestos claimants looked for satisfaction of their personal injury claims.

Michael Burns, Dana's Chairman and Chief Executive Officer, testified in reviewing Slide 1 or page 1 of Debtors' Witness Exhibit 2 to the breadth of pre-bankruptcy "old" Dana's operating businesses:

> Q.    Could you describe for the court what does this chart depict?
>
> A.    This is actually the structure of the prepetition company. So this is what it looked like at filing.
>
> Q.    Now prior to the petition date, as this chart shows, was Dana Corporation up there at the top?  Was Dana Corporation just a simple holding company?
>
> A.    *Absolutely not.  Not at all, it was a company that had both subsidiaries reporting to it, and in some cases*

*operated businesses, so it was not a holding company at all.*[5]

The Plan, however implements "Restructuring Transactions" resulting in *two* Dana entities — with all meaningful assets removed from the entity that Dana intends to leave for the satisfaction of asbestos personal injury claims. In fact, Mr. Burns testified that the effect of confirmation will be to strip all operating assets from the asbestos defendant "old" Dana and put them in a new company (a newly-created, non-asbestos defendant named Dana Limited), leaving only tainted, non-operating entities in "old" Dana.

> Q.  Let's talk about that. This is how Dana is going to look if the plan is confirmed and Dana emerges from Chapter 11?
>
> A.  Yes. This is our intention of how it would look if the plan were confirmed.[6]
>
> Q.  What have you got under this New Dana Holdco or the Dana Holding Corporation under the chart?
>
> A.  We actually have two entities.  ***On the far right is the Dana Companies, LLC, and that would hold what we refer to as the non-operating entities.  So these are essentially entities that have some environmental activities, and those entities are no longer being used and will be, at some point, remedied and sold, or sold with those environmental.***
> ***It also includes the assets of asbestos and any of the other operations that really are not — are really affected with a non-operating part of the business.***[7]

---

[5] Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 74:12-23, Dec. 10, 2007 and Dana's Trial Exhibit 2 at page or slide 1 (emphasis supplied).

[6] Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 77:22-25 and 78:1, Dec. 10, 2007.

[7] Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 78:11-22, Dec. 10, 2007.

Q.    Where are the operating assets going to be held under the structure?

A.    *The operating assets then fall under Dana Limited, the red box right below the Dana Holding Corporation.* And as you can see from that, they fall in that; those operating entities then fall in that. You can see that there's I guess you would call them holding companies so to speak, the Dana Automotive system that I talked about, and the Dana Heavy Vehicle Systems; those two. And then, what you see below that are really the operating entities and subsidiaries as we actually run the business.[8]

Thus, the non-operating companies will be retained in the asbestos defendant, "old" Dana, while the valuable operating assets will be locked away in a newly-created, non-asbestos defendant named Dana Limited. Mr. Burns was shown Slide 8 of Ad Hoc Committee Exhibit #1 (Appendix 1 to this Brief), a document prepared by counsel for the Debtors that graphically demonstrates how the Plan impairs asbestos personal injury claimants.[9] Mr. Burns testified that "shadow boxes" were shown highlighted behind the subsidiaries or properties that the Debtors believed had significant asbestos or environment liabilities asserted against them and that these "shadow boxed" non-operating entities would all end up with Dana Companies LLC, the successor by merger to "old" Dana.[10] Hence, all "tainted" or "non-operating" companies end up in "old" Dana, while all operating and "non-

---

[8] Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 79:9-20, Dec. 10, 2007.

[9] Admitted into evidence, Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 96:11-12, Dec. 10, 2007.

[10] Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 93:4-25, 94:1-8 and 97:4-18, Dec. 10, 2007.

tainted" companies are put in the newly created Dana Limited, beyond the reach of Class 3 Claimants.  Thus, prior to bankruptcy, the company that responded to asbestos claims controlled all of the assets of the Dana empire.  Post-confirmation, all meaningful assets were removed, and Class 3 claimants are left to pick the meager bones of environmentally-tainted assets while other creditors and shareholders inequitably feast on the profitable, operating assets in the new company.

Dana could not have rigged this asset stripping in fraud of creditors without the cover of the Confirmation Order.  Absent bankruptcy, a personal injury claimant who discovered that a tortfeasor company's management had squirreled away all valuable assets in a related, but technically distinct, entity could seek redress in a court of competent jurisdiction.  Such is the stuff of fraudulent conveyance claims.  Courts of equity exist to protect creditors against fraud.  But now, by virtue of an order of a federal bankruptcy court — itself a court of equity — if a personal injury creditor seeks to recover the stripped assets, the Debtors will no doubt shout "res judicata" and "collateral estoppel" and will attempt to use this federal court order to limit (or "channel") the asbestos victim's claims to the gaunt skeleton that is now "old" Dana.

Not only did the Bankruptcy Court approve the Restructuring Transactions that accomplished the asset stripping, Confirmation Order at 28-29, ¶ W., it permanently enjoined all Persons from pursuing any

Liabilities that are exculpated pursuant to Section IV.E.7 of the Plan.

Confirmation Order at 41, ¶ 20 (all persons who hold or held any liabilities

"exculpated pursuant to Section VI.E.7 of the Plan . . . are permanently

enjoined" from pursuing relief in any way).

> Section IV.E.7 of the Plan provides in pertinent part:

> From and after the Effective Date, the Released Parties shall
> neither have nor incur any liability to any Person for any act
> taken or omitted to be take in connection with the Debtors'
> restructuring . . . .

Plan at 37, Section IV.E.7. [11]

"Released Parties" are defined in the Plan as including the Debtors

and Reorganized Debtors.  Plan at 16, Section I.A.165.  Because the

Restructuring Transactions that effectuate the asset-stripping are "act[s]

taken … in connection with the Debtors' restructuring," the Debtors' have

altered the rights of asbestos-claimants to pursue the fraudulent transfers. [12]

---

[11] Debtors contend that asbestos personal injury claims are not impaired, because "the remedies allegedly endangered by the Plan . . . would be unavailable to Asbestos Personal Injury Claimants regardless of the existence of the Plan's exculpation provision." Supplemental Brief in Support of Confirmation of Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession (Doc. No. 7377) at 11.  The essence of the Debtors' argument in that regard is that fraudulent conveyance claims are not ripe until there is a judgment.  *Id.* at 11-12.  Notably, Debtors do ***not*** argue that they will not use the exculpation provision to thwart claims that are ripe.

[12] Debtors carved asbestos personal injury claims out of the injunction and general releases included in the Plan.  Plan at 36, Section IV.E.5.c ("nothing in the Plan shall prevent the holders of Asbestos Personal Injury Claims from exercising their rights against any applicable Debtor or Reorganized Debtor or its Estate or Assets with respect to their Asbestos Personal Injury Clams.") and 37, Section IV.E.6.b ("nothing in the Plan shall be deemed to release any applicable Debtor or Reorganized Debtor from any Liability arising from or related to Asbestos Personal Injury Claims.")  However, nothing in the Plan or the Confirmation Order carves asbestos personal injury claims out of the permanent protection afforded the Debtors for acts taken in connection with their restructuring, *e.g.*, the "Restructuring Transactions."

The Plan materially alters the rights of holders of asbestos personal injury claims by limiting the assets available to satisfy those claims through the Bankruptcy Court-approved "Restructuring Transactions" and by "releasing" the Released Parties of their liability to creditors for improper denuding of a corporation. It is telling, really, that the Debtors went to such a great effort to deprive the Class 3 Claimants of the right to vote. In fact, it gives the lie to the Debtors' hypothesis that the Claimants are "unimpaired." No creditor in his right mind would accept a Plan that so seriously dilutes his chances of recovery while leaving abundant assets for other creditors. For this reason alone, confirmation of the Plan was reversible error.

**B.     THE BANKRUPTCY COURT ERRED IN CONFIRMING A PLAN THAT CREATES A TWO-ENTITY STRUCTURE THAT CHANNELS ASBESTOS PERSONAL INJURY CLAIMS TO ONE UNDERFUNDED ENTITY, WHILE EFFECTIVELY IMMUNIZING THE REMAINING OPERATING ENTITY FROM ASBESTOS CLAIMS.**

Congress itself expressly created a mechanism to address the continuing asbestos liabilities of companies no longer dealing in asbestos that wish to reorganize their business. Pursuant to 11 U.S.C. § 524(g), a plan of reorganization may be confirmed that creates an asbestos trust that:

> is to assume the liabilities of a debtor which at the time of entry of the order for relief has been named as a defendant in personal injury, wrongful death, or property-damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products[13]

---

[13] 11 U.S.C. § 524(g)(2)(B)(i)(I). The Debtors have never disputed that they have been named as defendants in cases in which asbestos personal injury claims have been asserted. Third Amended Disclosure Statement with Respect to Third Amended Joint Plan of Reorganization of Debtors and Debtors in Possession at 66, Section VII.A.3 ("Dana and certain of the Debtors have been, and are expected to continue to be, names as defendants in cases related to the exposure of people to asbestos . . . .").

With the aid of this statutory alternate-entity mechanism, companies have confirmed plans that enable them to reenter the marketplace while at the same time assuring fair and equitable treatment of asbestos personal injury claimants, whom Congress sought to protect through the substitution of an adequately-funded alternate entity that would assume liabilities for the continuing human cost of asbestos exposure. Debtors here seek to have their cake (channeling asbestos liabilities to a legally isolated entity) and eat it too (avoiding the fundamental requirements of Section 524(g) that require approval by creditors and adequate funding of the substitute entity).

By virtue of the Confirmation Order, Dana will effectively be divided into two entities: Dana Limited which holds the operating subsidiaries, and Dana Companies LLC—the successor by merger to "old" Dana—which holds the non-operating entities burdened by all of the Debtors' asbestos (and environmental) liabilities. Confirmation Order at 28-29, ¶ W.[14] The Plan is thus a two-entity plan — one of which holds all of the operating assets of the Debtors and one of which has all of the Debtors' asbestos liabilities. The latter entity is manifestly equivalent to an underfunded 524(g) trust. First, the Debtors consciously underfunded the asbestos trust-like entity and then

---

[14] Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 93:4-25, 94:1 and 97:4-18, Dec. 10, 2007.

the Debtors deny the beneficiaries of the "trust" their Bankruptcy Code right to vote on whether to approve it.

The Third Circuit has held that creative use of other provisions of the Bankruptcy Code cannot accomplish an "end run" around the more specific requirements of Section 524(g). In *Combustion Eng'g.*, that court considered an appeal of a bankruptcy court order that sought to use Section 105(a) to extend an asbestos channeling injunction to include third-party actions against non-debtors where the alleged liability was not derivative of the debtor. After noting that both the plain language of Section 524(g) and its legislative history provided no specific authority to extend a channeling injunction to non-derivative third party actions against non-debtors, the Third Circuit ultimately held that "§ 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g), which is the means Congress prescribed for channeling the asbestos liability of a non-debtor." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 237, n.50 (3d Cir. 2005). In so holding, the Third Circuit stated as follows:

> Because § 524(g) expressly contemplates the inclusion of third parties' liability within the scope of a channeling injunction—**and sets out the specific requirements that must be met in order to permit inclusion**—the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g).[15]

---

[15] This holding is also consistent with "the well-settled maxim that specific statutory provisions prevail over more general provisions," and the Third Circuit cited to this maxim as support for its conclusion that "the explicit limitations and requirements set forth in § 524(g) preclude the use of § 105(a) to extend application of the trust/injunction mechanism to … [certain] non-debtors." *In re Combustion Eng.g*, 391 F.3d at 237, n.49 (citing *Varity Corp. v. Howe,* 516 U.S. 489, 511 (1996) (interpreting the "the specific governs the general" canon of statutory construction as "a warning against applying a general provision when doing so

*Id.* at 236-37 (emphasis supplied).

Similarly, Section 524(g) *expressly* provides a *specific* mechanism by which debtor's asbestos-related personal injury liabilities are to be managed in a Chapter 11 proceeding.  In allowing the Debtors to circumvent the requirements of Section 524(g) and yet channel their asbestos-related liabilities away from their more valuable assets, without providing holders of asbestos personal injury claims the statutory safeguards of Section 524(g), the Bankruptcy Court committed clear error.

C.    THE BANKRUPTCY COURT ERRED IN CONFIRMING A PLAN THAT PROVIDES A MECHANISM FOR TREATING FUTURE ASBESTOS PERSONAL INJURY CLAIMS WITHOUT COMPLYING WITH 11 U.S.C. §524(g).

On the eve of confirmation, the Bankruptcy Court approved an astonishing 7,500 undisclosed settlements with "Certain Asbestos-Related Personal Injury Plaintiffs" (the "Settlement Agreements").  Its order[16] removed vast numbers of Class 3 claims from treatment under the Plan and set up a secret, undisclosed procedure for dealing with them and even with the future asbestos claims that were yet to arise.  According to the

---

would undermine limitations created by a more specific provision"); *Sea Harvest Corp. v. Riviera Land Co.,* 868 F.2d 1077, 1080 (9th Cir. 1989) (Section 105(a) "does not empower courts to issue orders that defeat rather than carry out the explicit provisions of the Bankruptcy Code[.]"); 2 COLLIER ON BANKRUPTCY, ¶ 105.04 at 105-15 n.5; *In re Am. Hardwoods, Inc.,* 885 F.2d 621, 625-26 (9th Cir. 1989) ("[S]ection 105 does not authorize relief inconsistent with more specific law.")).

[16] Order Approving Certain Settlement Agreements between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs, Doc. No. 6229.  The Ad Hoc Committee objected to the approval of those settlement agreements pursuant to the Motion of Debtor Dana Corporation for an Order, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), Approving Certain Settlement Agreements between Dana Corporation and Certain Asbestos-Related Personal Injury Plaintiffs (the "Settlement Motion," Doc. No. 6724) because the actual settlement agreements were filed under seal and not disclosed even to members of the same class — the members of the Ad Hoc Committee.

Settlement Motion, the undisclosed Settlement Agreements provide "**a mechanism for addressing future cases that may be brought by the Tort Attorneys.**"  Settlement Motion at 7, ¶ 16 (emphasis supplied).  In the bankruptcy context, however, Section 524(g) provides the exclusive means of addressing future asbestos demands.  The Third Circuit has described Section 524(g) as providing a "unique funding mechanism [that] makes it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process."  *In re Combustion Eng'g.*, 391 F.3d at 234.  In fact, as expressly recognized by the Third Circuit:

> [The] requirements [of Section 524(g)] are specifically tailored to protect the due process rights of future claimants.  For example, a court employing a § 524(g) channeling injunction must determine that the injunction is "fair and equitable" to future claimants, 11 U.S.C. § 524(g)(4)(B)(ii), and must appoint a futures representative to represent their interests. 11 U.S.C. § 524(g)(4)(B)(I).  ***The court must also determine that the plan treats "present claims and future demands that involve similar claims in substantially the same manner."***  11 U.S.C. § 524(g)(2)(B)(ii)(V).  Finally, the statute requires that a 75% super-majority of claimants whose claims are to be addressed by the trust vote in favor of the plan.  11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).

*Combustion Eng'g.*, 391 F.3d at 234 n.45 (emphasis supplied); *see also In re G-I Holdings, Inc.*, 328 B.R. 691, 697 (D.N.J. 2005) (finding that 11 U.S.C. § 524(g) was designed to "protect the due process rights of the future [asbestos] claimants").  Thus, Section 524(g) attempts to assure equal treatment of present and future claimants.  In this case, the Debtors established an

undisclosed mechanism for the treatment of *some* future claimants (in the undisclosed Settlement Agreements) without complying with the safeguards Congress established for that purpose while providing ***different treatment*** to *other* future claimants relegated to Class 3 treatment.  This is not permissible.

Congress expressly crafted Section 524(g) to contain a detailed methodology for addressing future asbestos demands that includes a mechanism for assuring substantially similar treatment between present claimants and future claimants and appointment of a "futures representative" to protect the interests of future claimants.  11 U.S.C. § 524(g)(2)(B)(ii)(V).  Here, however, the Debtors employed a combination of secret settlements under Rule 9019 and a bankruptcy court's confirmation powers to make an end run around Section 524(g).  As noted earlier, the Third Circuit reversed a bankruptcy court order that sought to achieve a result not contemplated by the more specific provisions of Section 524(g).  *In re Combustion Eng'g.,* 391 F.3d 190.  The Bankruptcy Court's confirmation of the Plan here permits the Debtors to address future asbestos demands in a manner not contemplated by or in compliance with the specific provisions of Section 524(g).

D.    THE BANKRUPTCY COURT ERRED IN CONFIRMING A PLAN THAT PROVIDES DIFFERENT TREATMENT TO IDENTICALLY CLASSIFIED CLAIMS.

Section 1123(a)(4) requires a plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular

claim or interest agrees to less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4).    While "Section 1123(a)(4) does not require precise equality" of treatment, it does require approximate equality of treatment of claims within the same class.  *In re Quigley Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007).

Where a plan of reorganization provides more favorable treatment to some class members without the consent of the class members receiving less favorable treatment, the plan of reorganization violates 11 U.S.C. § 1123(a)(4).  The court in *In re Adelphia Communications Corp.* held that appellants had demonstrated a substantial likelihood of succeeding "in their argument that the distribution of certain benefits to some claimants but not to others within a class violates section 1123(a)(4)."  *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 364 (S.D.N.Y. 2007).  In that case, the plan of reorganization provided that some claimants would receive additional benefits on top of their pro rata distributions under the plan if they voted to accept the plan.  *Id.* at 363.  The court found that such an arrangement likely violated Section 1123(a)(4), because "[s]ection 1123(a)(4) guarantees that each class member will be treated equally, regardless of how it votes on a proposed plan."  *Id.*

The Sixth Circuit in *In re Dow Corning, Corp.* also found that a plan of reorganization violated Section 1123(a)(4) where it provided additional protections to some claimants that were not provided to other claimants

within the same class. *In re Dow Corning, Corp.*, 280 F.3d 648, 659-61 (6th Cir. 2002). The court found that because the plan provided certain claimants with a far more effective recovery mechanism than others, the plan did not provide equal treatment for all members of the same class. *Id.* at 659-60.

In addition, the Third Circuit has indicated that the Bankruptcy Code's policy of equality of distribution among creditors may be violated where certain creditors are provided a greater recovery than other similarly situated creditors. In *In re Combustion Eng'g*, the court found that the two-trust framework created by the plan appeared to allow certain settling asbestos claimants to receive a larger distribution than other asbestos claimants—namely, "the future asbestos claimants, and other non-parties to the pre-petition settlement." *In re Combustion Eng'g*., 391 F.3d at 239-42. Consequently, the court questioned whether the plan provided for the "requisite equality of distribution among creditors" and remanded the case for further findings on this issue. *Id.* at 242.

In the current case, the Plan placed all asbestos personal injury claims into a single class and then on the eve of confirmation set aside many thousands of claims for special treatment. Because of these last minute undisclosed settlements, some Class 3 claimants presumably get favored relief and will receive payment from a pre-existing escrow fund, while other claimants must  pursue recovery from the stripped, denuded skeleton of "old" Dana. This last-minute secret dealing with thousands of Class 3 claimants

violates Section 1123(a)(4)'s requirements of approximate equality of treatment. *In re Quigley Co., Inc.*, 377 B.R. at 116; *see also In re Dow Corning, Corp.*, 280 F.3d at 659-61.

In fact, the Plan in this case bears a striking similarity to the *Combustion Engineering* plan, which the Third Circuit refused to confirm. While Dana's Plan does not propose a two-trust payment structure, it does propose to pay certain Class 3 claimants pursuant to a different mechanism than other Class 3 claimants. Like *Combustion Eng'g.*, the Plan allows certain settling asbestos claimants to recover from a separate fund that other non-settling claimants (and perhaps some settling claimants) are not allowed to access. The Third Circuit questioned the propriety of such a mechanism under a plan that separately classified settling and non-settling asbestos claimants. If such a mechanism were enough to necessitate remand for further findings, the mechanism under this Plan, which achieves the same impermissible end, is likewise unacceptable.

E.   **THE BANKRUPTCY COURT ERRED IN CONFIRMING THE PLAN BECAUSE IT CLASSIFIED ASBESTOS PERSONAL INJURY CLAIMS SEPARATELY FROM OTHER GENERAL UNSECURED CLAIM AND OTHER TORT CLAIMS.**

"Similar claims may be classified separately only for a legitimate reason." *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996). The Plan classified all general unsecured claims and tort claims, with the exception of asbestos personal injury claims, as Class 5A or Class 5B Claims.[17] While

---

[17] Class 5A Claims are General Unsecured Claims Against EFMG and are to receive Cash that equates to the amount of such Allowed Claim. Plan at 25, Section II.B.8. Class 5B

separate classes of asbestos claims may be appropriate in Section 524(g)
cases when Congress mandates that the class vote separately, the Debtors
chose not to afford asbestos claimants their Congressionally-mandated rights.
Here, Debtors offered no legitimate reason for classifying asbestos personal
injury claims separately from other unsecured claims or separately from
other tort claims.  The Bankruptcy Court erred in permitting Debtors to
gerrymander similar claims (non-asbestos tort claims and asbestos tort
claims) into different classes with no valid rationale for doing so.

## F.    THE BANKRUPTCY COURT ERRED IN CONFIRMING A PLAN THAT IS NOT FEASIBLE UNDER 11 U.S.C. § 1129 (a)(11)

To be confirmed, every chapter 11 plan must be "feasible" by virtue of
Section 1129(a)(11).[18]  The standard by which a court determines feasibility is
"whether the plan offers a reasonable assurance of success.  Success need not
be guaranteed."  *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 649 (2d Cir.
1988); *In re Monnier Bros.,* 755 F.2d 1336, 1341 (8th Cir. 1985).  However, a
bankruptcy court cannot approve a plan unless it has at least a reasonable
prospect for success.  *Monnier Bros.* 755 F.2d at 1341.

---

Claims are General Unsecured Claims Against the Consolidated Debtors and will receive
their pro rata share of New Dana Holdco Common Stock and cash as describe in the Plan.
Plan at 25, Section II.B.9.  "General Unsecured Claims" are defined to include Tort Claims
with the exception of asbestos personal injury claims.  Plant at 10, Section I.A.98.
[18] Section 1129(a)(11) provides:

(a)    The court shall confirm a plan only if all of the following requirements are met:
. . .

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for
further financial reorganization, of the debtor or any successor to the debtor under the
plan, unless such liquidation or reorganization is proposed in the plan.

Proponents of a plan of reorganization have the burden of proof to establish that the plan is feasible by a preponderance of the evidence. *In re Danny Thomas Props. II Ltd. P'ship*, 241 F.3d 959, 963 (8th Cir. 2001); *In re Heritage Org. L.L.C.*, 375 B.R. 230, 311 (Bankr. N.D. Tex. 2007). The Debtors did not — and could not — meet their burden to demonstrate that the Plan is feasible.

For all of the reasons set forth in Appellant's Brief of the Ad Hoc Committee's co-appellant, José Angel Valdez, which the Ad Hoc Committee adopts as if fully set forth herein, the Bankruptcy Court committed reversible error in confirming a plan that is not feasible.

## VIII.
## CONCLUSION

The Bankruptcy Court committed reversible error in (1) confirming the Plan which denied Class 3 asbestos personal injury the right to vote as impaired creditors; (2) confirming the Plan which enabled the Debtors to circumvent 11 U.S.C. § 524(g) by channeling asbestos personal injury claims to certain entities with limited assets without complying with the requirements of 11 U.S.C. § 524(g); (3) confirming the Plan which provides treatment for future asbestos personal injury claims without the safeguards prescribed by 11 U.S.C. § 524(g); (4) confirming the Plan which treated claims in the same class differently; (5) confirming the Plan when it classifies asbestos personal injury claims separately from all other general unsecured claims and tort claims without providing any legitimate reason for doing so;

24

and (6) confirming a plan that is not feasible.  For the foregoing reasons, the

Ad Hoc Committee respectfully prays that the Confirmation Order be

VACATED, that the matter be REMANDED, and for any and all other relief

to which the Ad Hoc Committee may be justly entitled.

Dated:  February 19, 2008

Respectfully submitted,

/s/ Douglas T. Tabachnik
Douglas T. Tabachnik (DT 6337)
LAW OFFICES OF
DOUGLAS T. TABACHNIK, P.C.
Suite C
Woodhull House
63 West Main Street
Freehold, New Jersey 07728
(732) 792-2760

and

Sander L. Esserman (SE 0356)
Robert T. Brousseau (RB 4873)
Jo E. Hartwick (JH 4109)
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas  75201
(214) 969-4900

**ATTORNEYS FOR THE
AD HOC COMMITTEE OF
ASBESTOS PERSONAL INJURY
CLAIMANTS**

# APPENDIX 1



CONFIDENTIAL
DANA-56358

NY-3890067