**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) |
| | ) |
| | ) 1:08-cv-01037 (PAC) |
| DANA CORPORATION, et al., | ) |
| | ) |
| Debtors, | ) |
| | ) |
| THE AD HOC COMMITTEE OF | ) |
| ASBESTOS PERSONAL INJURY | ) |
| CLAIMANTS, | ) |
| | ) |
| Appellant. | ) |

**REPLY BRIEF OF APPELLANT**
**THE AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS**
**AND**
**RESPONSE TO DANA CORPORATION, ET AL.'S MOTION TO DISMISS**

Douglas T. Tabachnik (DT 6337)
**LAW OFFICES OF DOUGLAS T.**
**TABACHNIK, P.C.**
Suite C
Woodhull House
63 West Main Street
Freehold, New Jersey 07728
Telephone: (732) 792-2760
Facsimile: (732) 792-2761

and

**STUTZMAN, BROMBERG, ESSERMAN &**
**PLIFKA,**
A Professional Corporation
Sander L. Esserman (SE 0356)*
Robert T. Brousseau (RB 4873)*
Jo E. Hartwick (JH 4109)*
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

*Admitted pro hac vice.

# I.
# TABLE OF CONTENTS

II) TABLE OF AUTHORITIES ............................................................................... iii

III) SUMMARY OF RESPONSE TO MOTION TO DISMISS AND REPLY IN SUPPORT OF
APPEAL OF CONFIRMATION ORDER ........................................................... 1

IV) ARGUMENT IN OPPOSITION TO MOTION TO DISMISS ...................................... 3

    A. SUBSTANTIAL CONSUMMATION OF A PLAN DOES NOT ALONE RENDER AN
APPEAL MOOT ........................................................................................ 3

    B. APPELLANTS HAVE REBUTTED THE PRESUMPTION THAT THE APPEAL IS
MOOT ................................................................................................... 7

      1.  The Court can order effective relief. ........................................... 7

        a. Effective relief does not require returning parties to
the pre-Effective Date status quo. ........................................ 8

        b. Effective relief can be granted in this case without
unwinding any transaction. .................................................. 9

      2.  The relief sought by Appellants will not affect the reemergence
of the Debtors as revitalized corporate entities. ...................... 11

      3.  The relief sought by the Appellants would not unravel intricate
restructuring transactions. ....................................................... 15

      4.  No parties would be adversely affected by the relief sought – and
at any rate, all parties have received notice of this appeal. ........ 17

      5.  The Appellants failure to obtain a stay pending appeal does not
render the appeal moot. ........................................................... 18

V) REPLY IN SUPPORT OF APPEAL OF CONFIRMATION ORDER ............................ 19

    A. ASBESTOS PERSONAL INJURY CLAIMS WERE IMPAIRED BY
THE PLAN ............................................................................................. 19

    B. DEBTORS CANNOT OBTAIN THE BENEFITS OF SECTION 524(G) WITHOUT
COMPLYING WITH THE REQUIREMENTS OF SECTION 524(G) ..................... 20

    C. THE PLAN IMPROPERLY CLASSIFIED ASBESTOS PERSONAL INJURY CLAIMS ... 21

i

**D. THE PLAN DOES NOT PROVIDE IDENTICAL TREATMENT TO ALL ASBESTOS PERSONAL INJURY CLAIMS**......................................................................**23**

**VI) CONCLUSION**......................................................................**24**

# II.
## TABLE OF AUTHORITIES

Page

## A. CASES

*Bartel v. Harbor Airways, Inc.,*
196 B.R. 268 (S.D.N.Y. 1996) ................................................................................. 11

*Expeditors Int'l of Washington, Inc., v. Wang Labs., Inc.,*
No. Civ. A 92-12630-MLW, 1995 WL 791935 (D. Mass. 1995) ........................... 5

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),*
10 F.3d 944 (2d Cir. 1993) ..................................................................................... 4, 7

*In re 1515 Broadway Assocs., L.P.,*
153 B.R. 400 (S.D.N.Y. 1993) ............................................................................ 3, 4, 18

*In re American Homepatient, Inc.,*
420 F.3d 559 (6th Cir. 2006) ................................................................................... 5

*In re AOV Indus., Inc.,*
792 F.2d 1140 (D.C. Cir. 1986) .............................................................................. 3

*In re Armstrong World Indus., Inc.,*
348 B.R. 136 (D. Del. 2006) .................................................................................... 22

*In re Aurora Foods, Inc.,*
C.A. No. 04-166 GMS, 2006 WL 3747306 (D. Del. Dec. 19, 2006) ............... 4, 8, 14

*In re Best Prods. Co., Inc.,*
177 B.R. 791 (S.D.N.Y. 1995) ............................................................................. 9, 16

*In re Chateaugay Corp.,*
167 B.R. 776 (S.D.N.Y. 1994) .............................................................................. 6, 8

*In re Club Assocs.,*
956 F.2d 1065 (11th Cir. 1992) ............................................................................... 18

*In re Delta Air Lines, Inc.,*
374 B.R. 516 (S.D.N.Y. 2007) ............................................................................ 10, 16

Page

*In re E-11 Holdings Inc.,*
No. 94 Civ. 2246 (LAP), 1995 WL 387650 (S.D.N.Y. 1995) ................. 11

*In re Fours on Seventh, LLC,*
251 B.R. 784 (S.D.N.Y. 2000) ................................................ 9

*In re Kaiser Aluminum Corp.,*
No. 01-10429(JKF), 7312, 2006 WL 616243 (Bankr. D. Del. 2006) ............ 22

*In re Lafayette Hotel P'ship,*
Nos. 96 Civ. 7476 HB, 95B 40682 BRL, 1997 WL 599386 (S.D.N.Y. Sept. 29, 1997) ..... 3

*In re P.C. Liquidation Corp.,*
No. CV-07-0018 (SJF), 2008 WL 314189 (E.D.N.Y. Feb. 1, 2008) ............. 4, 7

*In re PWS Holdings Corp.,*
228 F.3d 224 (3d Cir. 2000) ................................................ 4, 6

*In re United Merchs. & Mfrs., Inc.,*
138 B.R. 426 (D. Del. 1992) ............................................. 5, 8, 18

*In re Worldcom, Inc.,*
No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ......... 21

*Six W. Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp.,*
286 B.R. 239 (S.D.N.Y. 2002) .............................................. 9, 16, 17

*UNARCO Bloomington Factory Workers v. UNR Indus., Inc.,*
124 B.R. 268 (N.D. Ill. 1990) ............................................ 22

## B. STATUTORY PROVISIONS

11 U.S.C. § 524(g) ............................................... 2, 20, 21, 22

11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) ............................. 21, 22

11 U.S.C. § Section 524(g)(4)(B)(i) .............................. 22

**III.**

**SUMMARY OF RESPONSE TO MOTION TO DISMISS AND REPLY IN SUPPORT OF APPEAL OF CONFIRMATION ORDER**

Debtors mischaracterize the law of "equitable mootness" in order to avoid the fatal flaws in their Plan of Reorganization.   Debtors devote over half of their brief to irrelevant case law that fails to address the very simple point that a case is never "equitably moot" where the reviewing court can fashion a remedy for the error below.    The Debtors imply that once a bankruptcy plan is "substantially consummated", a reviewing court has no choice but to dismiss an appeal. This is simply not the law.   Similarly, the Debtors erroneously state that the Appellants' failure to seek a stay of the Confirmation Order pending appeal renders the appeal moot.  This Court — and others — have held to the contrary.  Finally, the Debtors try to convince the Court that a veritable parade of horrors would occur if the Court were to consider the appeal on the merits and grant the Appellants relief.  The Debtors suggest that the Appellants seek to unwind intricate transactions, return everyone involved in the bankruptcy cases to the pre-Effective Date status quo and impair the rights of thousands of third parties.  Nothing could be further from the truth. The Appellants merely ask that this Court modify the Confirmation Order in a very straightforward way without undoing a single Restructuring Transaction.  Since this Court can grant the Appellants effective relief without undoing any transactions made pursuant to the Plan, without disturbing any distributions made under the Plan and without in any way affecting the Debtors' successful emergence from bankruptcy as revitalized corporate entities, this appeal is not equitably moot.

The Debtors' arguments on the merits of the flawed Plan and Confirmation Order avoid, rather than confront, the arguments made by the Appellants.  Debtors ignore provisions

of the Plan and Confirmation Order that impaired asbestos personal injury claims or offer a tortured construction of those provisions.  Debtors likewise assert that Appellants take a position that they have never taken:  that a debtor with asbestos liabilities *must* propose a plan of reorganization utilizing 11 U.S.C. § 524(g).  By misconstruing the Appellants' position in that regard, the Debtors apparently hope to divert the Court's attention from what the Debtors actually did:  they convinced the Bankruptcy Court to confirm a plan that provided Debtors with some of the benefits of Section 524(g) without the imposition of the requisite safeguards afforded asbestos personal injury claimants and future asbestos claims by that statute.  Finally, the Debtors insist that asbestos personal injury claims were properly classified under the Plan, citing not a single case of a separate classification of asbestos claims outside of Section 524(g).  Only within the protective regimen of Section 524(g) may asbestos claims be classified separately from other personal injury and general unsecured claims.  The Debtors can find no authority to the contrary.   The Confirmation Order should be reversed and Appellants provided with the relief they seek.

## IV.
## ARGUMENT IN OPPOSITION TO MOTION TO DISMISS

### A.    SUBSTANTIAL CONSUMMATION OF A PLAN DOES NOT ALONE RENDER AN APPEAL MOOT.

Debtors mistakenly contend that "substantial consummation" of the Plan somehow equates to "equitably moot" as a grounds for dismissal of this Appeal.  This is simply a misstatement of the law.  Courts have repeatedly held that "substantial consummation" is not a magic incantation that automatically results in an appeal being dismissed.  *In re 1515 Broadway Assocs., L.P.*, 153 B.R. 400, 405 (S.D.N.Y. 1993) (noting that the debtor conceded that

the substantial consummation of a plan of reorganization is not "'the talisman that [the debtor's co-defendant guarantor] argues it is.'").  Stated differently, "a finding of 'substantial consummation' . . . alone does not render relief impossible or inequitable."  *In re Lafayette Hotel P'ship*, Nos. 96 Civ. 7476 HB, 95 B 40682 BRL, 1997 WL 599386, at *3 (S.D.N.Y. Sept. 29, 1997)(citations omitted).

Even if a plan of reorganization has been substantially consummated, a court should not summarily dismiss an appeal as equitably moot.  Rather, as this Court has recognized:

> a "court cannot avoid its obligation to scrutinize each individual claim, testing the feasibility of granting the relief against its potential impact on the reorganization scheme as a whole."

*In re 1515 Broadway Assocs., L.P.,* 153 B.R. at 405 (quoting *In re AOV Indus., Inc.*, 792 F.2d 1140, 1148 (D.C. Cir. 1986)).  In *1515 Broadway Assocs.*, this Court denied the debtor's motion to dismiss on the grounds of equitable mootness and allowed the appeal to proceed as limited by the Court.  *Id.* at 407-08.

Courts have found that an appeal of confirmation of a plan of reorganization was not mooted by the substantial consummation of the plan when the relief sought would not "unravel such intricate transactions 'so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court.'" *In re PC Liquidation Corp.*, No. CV-07-0018(SJF), 2008 WL 314189, at * 5 (E.D.N.Y. Feb. 1, 2008) (quoting *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 953 (2d Cir. 1993) (*Chateaugay II)); see also In re Aurora Foods, Inc.*, C.A. No. 04-166 GMS, 2006 WL 3747306, at *4 (D. Del. Dec. 19, 2006) ("In the present case, the Plan at issue was substantially consummated in a definitional sense . . . . However, like [*In re PWS*

3

*Holdings Corp.*, 228 F.3d 224 (3d Cir. 2000)] and unlike *Continental Airlines,* the debtor has not offered sufficient evidence that R 2's claim for $6.85 million would effectively unravel this reorganization plan.").  In the case at bar, Appellants seek no unraveling of any transaction. They seek only to have their full legal and equitable rights restored by the modification of the Confirmation Order that makes it clear that all of the Reorganized Debtors remain liable to Class 3 asbestos personal injury claimants to the same extent as they were liable prior to the commencement of the bankruptcy case.

Debtors are also mistaken in their contention that the appeal is moot because Appellants did not obtain a stay of the Confirmation Order pending appeal.  The courts of appeal agree that a failure to obtain a stay does not itself render an appeal moot.  For example, in the case of *In re American Homepatient, Inc.,* 420 F.3d 559, 565 (6th Cir. 2006), although the appellants did not seek a stay of the confirmation order, the Sixth Circuit refused to dismiss the appeal on grounds of equitable mootness because the court found that the appellants "presented a plausible argument that [the relief requested could be granted] without affecting the success of the confirmed plan."  *Id.*  While the appellants' failure to obtain a stay was a factor to consider in determining whether the appeal was equitably moot, the Sixth Circuit stated that the "most important factor, is whether the requested relief would affect either the rights of parties not before the court or the success of the plan." *Id.* at 564.

Other courts also have declined to dismiss an appeal as moot despite substantial consummation of the Plan when relief is available to the appellant.  *In re United Merchs. & Mfrs., Inc.*, 138 B.R. 426, 429-30 (D. Del. 1992) (the court reasoned that a more equitable distribution of the remaining property, no matter how little remained, was sufficient relief to allow the

4

appeal to proceed); *Expeditors Int'l of Washington, Inc. v. Wang Labs., Inc.*, No. Civ. A. 92-12630-MLW, 1995 WL 791935 at *4-5 (D. Mass. 1995) ("[Appellants] . . . argue that the claim is not moot.  They assert the issue is cognizable on appeal because a remedy is still available . . . .  Although the property cannot be used to satisfy Wang's debt, they claim a favorable judgment would allow [Appellants] to enjoy the status of secured creditors for purposes of reorganization.  [Appellants] are correct.").

In a case similar to the case now before this Court, the Third Circuit also declined to dismiss an appeal of a confirmation order on grounds of equitable mootness even though the plan had been substantially consummated.  *In re PWS Holdings Corp.*, 228 F.3d 224, 236-37 (3d Cir. 2000).  The appellants there, just as the Appellants here, complained that the plan improperly relieved certain parties of liability.  In fact, one of the releases challenged there involved the release of liability for acts taken during the bankruptcy, just as here the Appellants seek modification of provisions that might be used to avoid liability to asbestos claimants.  *Id.* at 235.  The Third Circuit stated that the appeal was not moot, because the Court could simply strike the improper releases:

> The Debtors here argue that, since the stay was denied and the reorganization
> has gone forward, this case is equitably moot.  They argue that the appeal, if
> successful, would necessitate the reversal or unraveling of the entire plan of
> reorganization.  We disagree.  There are intermediate options.  The releases (or
> some of the releases) could be stricken from the plan without undoing other
> portions of it.

*Id.* at 236.

The Third Circuit, relying on this Court's earlier opinion in *In re Chateaugay Corp.*, 167 B.R. 776, 780 (S.D.N.Y. 1994) based its decision not to dismiss the appeal on the fact that "the plan could go forward" if the requested relief was granted and on the fact that the appellants'

"reply brief suggests that it now seeks only alterations to the plan rather than an unraveling of the reorganization." *Id.* at 237. Since the Appellants here, like the appellants in the *PWS Holdings* case, do not seek to unravel the reorganization, but only seek "alterations to the plan", this appeal is not equitably moot.

**B.    APPELLANTS HAVE REBUTTED THE PRESUMPTION THAT THE APPEAL IS MOOT.**

While the substantial consummation of a plan of reorganization creates a rebuttable presumption of equitable mootness, the Debtors acknowledge that an appellant can overcome that presumption by demonstrating the presence of the following circumstances:

(a)    the court can still order some effective relief;

(b)    such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;

(c)    such relief will not unravel the intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;

(d)    the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and

(e)    the appellant pursued with diligence all available remedies to obtain stay of execution of the objectionable order ... if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Chateaugay II*, 10 F.3d at 952-53 (internal citations and quotations omitted).

As shown below, Appellants have satisfied ***all*** of the *Chateaugay* factors.

**1.    The Court can order effective relief.**

Courts routinely find that effective relief can be granted as long as such relief does not require the appellate court to "unravel" the confirmed plan. *See, e.g., In re PC Liquidation Corp.*, 2008 WL 314189, at *5 (finding appellant had rebutted the presumption that the appeal

should be dismissed as equitably moot where the only relief available to the appellant was conversion from a Chapter 11 liquidating plan to a Chapter 7 plan, observing that doing so would not unravel intricate transactions); *In re United Merchs. & Mfrs., Inc.*, 138 B.R. at 430 (a more equitable distribution of the remaining property would constitute sufficient relief to permit the appeal to proceed); *In re Chateaugay Corp.*, 167 B.R. 776, 779 (S.D.N.Y. 1994)("Aetna's appeal is not moot, as the relief it requests would neither unravel the reorganization plan, nor adversely affect parties not before this court."); *In re Aurora Foods, Inc.*, 2006 WL 3747306, at *4 ("the debtor has not offered sufficient evidence that R 2's claim for $6.85 million would effectively unravel this reorganization plan.").

        a.        *Effective relief does not require returning parties to the pre-Effective Date status quo.*

      The Debtors erroneously contend that "effective relief" in this instance would require the Court to revoke the Plan and return all parties to the status quo that existed just prior to the Effective Date. Appellees' Brief at 12. In fact, they trot out a disaster scenario pretending that any form of effective relief requires returning parties to the pre-emergence status quo. Appellees' Brief at 12, n.28. In fact, effective relief is available without undoing the bankruptcy. The Court can simply interlineate a new clause into the Confirmation Order making clear that the Class 3 asbestos personal injury claimants are not being left without recourse against the assets that were shuttled out of Dana. Since the Debtors claim it is not their intention to adversely affect the asbestos claimants, language to that effect can easily be inserted into a modified Confirmation Order.

      Appellees ignore the line of cases such as *PWS Holding Corp.*, where the Third Circuit found that a case is not equitably moot in light of the  reviewing court's ability to simply

modify the plan to strike releases   Instead, the Debtors misconstrue the cases they cite.  In each of Appellees' cases the courts found that the relief sought by the appellants in those particular appeals required revocation of the entire bankruptcy plan.  *Six W. Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp.,* 286 B.R. 239, 246 (S.D.N.Y. 2002) (relief sough would require undoing a settlement that "was integral to the Plan" and "would affect the financing obtained and have definite repercussions for the transactions consummated in reliance thereon."); *In re Best Prods. Co., Inc.*, 177 B.R. 791, 802 (S.D.N.Y. 1995) ("The relief requested by the RTC would, if granted, be tantamount to confirmation of a plan that is different than the one proposed by the Debtors and approved by 97% of the creditors. . . . if the Plan's enforcement of the subordination agreements were reversed on appeal, *the Plan would have to be voided.*) (emphasis in original); *In re Fours on Seventh, LLC*, 251 B.R. 784, 793 (S.D.N.Y. 2000) (the appellant itself "characterizes its requested relief as 'unwinding he transaction and returning the parties to the status quo.'").

> b.    *Effective relief can be granted in this case without unwinding any transaction.*

Here, effective relief can be granted the Appellants without unwinding any transaction. Effective relief can be afforded Appellants by modifying language of the Plan and Confirmation Order in a manner that leaves the Plan's transactions in place.  This merely entails holding Dana Holding Corporation and other Reorganized Debtors financially responsible to asbestos personal injury claimants in the event that Dana Companies, LLC lacks the financial ability to make any of those payments and excepting asbestos personal injury claimants from the protections afforded Released Parties by the various exculpation

and other similar clauses in the Plan and Confirmation Order.  For example, the following

language could be inserted into the Confirmation Order without unwinding any transaction.

> Notwithstanding any provision of the Plan or any other provision of this
> Confirmation Order, the holder of a Class 3 Claim or future asbestos claimant
> may seek payment of its claim from any or all of the Reorganized Debtors
> without hindrance from any bar, discharge, injunction or other provision
> contained in the Plan prohibiting such Class 3 claimant or future asbestos
> claimant from seeking payment from the Reorganized Debtors.    This
> Confirmation Order shall not act as res judicata or collateral estoppel in any
> Class 3 claimant's or future asbestos claimant's subsequent lawsuit, or such
> claimant's efforts to seek payment from any of the Reorganized Debtors.

And, by amending the Plan's exculpation provision to state

> This section shall not apply to prevent holders of Asbestos Personal Injury
> Claims from seeking to pursue any claims or causes of action against any
> applicable Debtor or Reorganized Debtor.

Effective relief does not involve return or repayment of distributions made by the

Debtors under the Plan nor does it undo or otherwise affect stock distributions under the Plan.

Accordingly, Debtors' authority that effective relief cannot be granted when it would require

disgorgement of cash and stock distributions or recoupment of funds used pursuant to the

Exit Facility is not applicable.  *In re Delta Air Lines, Inc.*, 374 B.R. 516, 524 (S.D.N.Y. 2007)

(appeal of order approving settlement was moot "[b]ecause of the irreversible financial

transactions that have occurred, and because Delta has entered into a whole new set of

agreements relating to its use of the Cincinnati/Northern Kentucky Airport as a hub of its

operations," the relief sought by appellants would "'knock the props out from under the

authorization for every transaction that has taken place and create an unmanageable,

uncontrollable situation for the Bankruptcy Court.'"); *Bartel v. Bar Harbor Airways, Inc.*, 196 B.R.

268, 272 (S.D.N.Y. 1996)(the court would have been unable to order effective relief if it had

found that appellant's arguments had merit, because "[t]he assets sales are completed and the proceeds already distributed."); *In re E-II Holdings Inc.*, No. 94 CIV. 2246 (LAP), 1995 WL 387650, at *5-6  (S.D.N.Y. 1995) (dismissing portion of appeal that would disrupt the plan of reorganization where assets had been transferred or were reorganized for use by the post-confirmation corporation and over a billion dollars of transfers had been made from debtor to its creditors in transactions completed more than two years before).

       2.      **The relief sought by Appellants will not affect the reemergence of the Debtors as revitalized corporate entities.**

There is no evidence in this case that any financing obtained by the Debtors was conditioned on denying assurances to Class 3 asbestos personal injury claimants that they will retain their rights to seek recovery against the assets of all Reorganized Debtors rather than from a denuded Dana.

In fact, the record in this case is replete with testimony and statements that indicate that making Dana Holding Corporation's assets available to satisfy legitimate Class 3 Claims would not have any effect on the successful emergence of the Debtors as revitalized corporate entities.  The Debtors have repeatedly contended that Dana Companies, LLC will have ample assets to pay asbestos personal injury claims.

For example, Michael Burns, Chairman and Chief Executive Officer of Dana Corporation, testified:

Q.     All right.  Do you have an understanding of what the term reorganized Dana refers to?

A.     Yes, I believe I do.

Q.     What is your understanding?

> A.    Reorganized Dana is the entity that will hold the assets that will be available to asbestos claimants post emergence.
>
> Q.    Does reorganized Dana include the old Dana that existed prepetition?
>
> A.    I believe it does.
>
> Q.    Is the reorganized Dana, is it going to be a borrower under the exit facility?
>
> A.    No, it is not anticipated to be a borrower under the exit facility.
>
> Q.    As a result, will the exit facility result in any liens of any kind being imposed upon the assets of reorganized Dana?
>
> A.    No, the assets of reorganized Dana are going to be carved out from the lien pool.

Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 138:10-25 – 139:1-3, Dec. 10, 2007.

Additionally, John Heintz, an attorney who has worked with the Debtors in connection with their insurance coverage for asbestos personal injury claims since 1998, testified that the Debtors' coverage in that regard is substantial:

> Q.    And the 1.5 billion in available coverage, how does that compare to other defendants that you've seen that have been engaged in asbestos defense?
>
> A.    It is rather substantial when compared to most other asbestos-related defendants who have found themselves in bankruptcy. Typically those companies are in bankruptcy having largely exhausted their product liability limits, and what little, if anything, is disputed by the carriers for one reason or another. So, a fight is faced.
>
> That's not the case here. This is a substantial amount of product liability limits available, and the coverage disputes have been largely resolved with respect to the vast portion of them.

Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 149:3-18, Dec. 11, 2007.

11

As Kristopher M. Hanson, counsel for the Ad Hoc Committee of Dana Noteholders stated:

> The asbestos claimants have adequate assurance that they will have both insurance assets and other tangible assets in that under those claims, claims . . . don't all come due at once. They come due over a long period of time, and they are settled out over a long period of time as well. And most of them never make to trial. Most of them are settled.

Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 65:22-25 – 66:1-4, Dec. 12, 2007.

The Debtors have emphasized that their asbestos liability is low and declining. Appellee's Brief at 7-8. Counsel for the Debtors also have noted the relative insignificance of the Debtors' asbestos liabilities:

> I want to remind Your Honor that one month's union retiree and other benefits that have been saved or sacrificed, depending on your perspective in this case, exceed the annual asbestos outlay for a year.

Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354),13:22-25, Dec. 12, 2007.

> I almost hesitate to share it with Your Honor, one month's professional fee expenses in this case exceed the Debtors' annual outlay for asbestos.

Hr'g Tr., (*In re Dana Corporation, et al.*, Case No. 06-10354), 13:4-7, Dec. 12, 2007.

In this appeal, the Debtors have vaunted the financial health of "Reorganized Dana" or Dana Companies, LLC:

> Specifically, on the Effective Date, Reorganized Dana retained *$1.497 billion* in insurance resources and has an initial balance sheet of $195 million in *unencumbered assets.*

Appellee's Brief at 8 (emphasis in original).

A debtor's post-confirmation financial strength may be considered in determining the effect of the relief sought by an appellant:

> Given the projected strength of the debtor following reorganization, the court concludes that the Plan need not be undone to satisfy a $6.85 million contested payment.

*In re Aurora Foods, Inc.*, 2006 WL 3747306 at *4.

Just as in *Aurora Foods*, providing an effective remedy to Appellants (and remedying the unconscionable asset-stripping that leaves asbestos claimants with Claims against a denuded Dana) will have no economic impact on the Reorganized Debtors. If the Debtors' contentions are correct, requiring Dana Holding Corporation and the assets it received from the pre-bankruptcy Dana to remain ultimately liable for unsatisfied payments to asbestos personal injury claimants in the event that Dana Companies, LLC lacks the financial ability to make any of those payments would have no effect on the Debtors' successful emergence from Chapter 11 and would place Dana Holding Corporation at no appreciable future financial risk.

### 3.    The relief sought by the Appellants would not unravel intricate restructuring transactions.

As demonstrated above, the relief sought would not unravel intricate restructuring transactions. Requiring Dana Holding Corporation and the assets it received from Dana to remain ultimately liable for unsatisfied payments to asbestos personal injury claimants in the event that Dana Companies, LLC lacks the financial ability to make any of those payments would not affect any transactions or distributions made under the Plan.

The Debtors, on the other hand, cite case after case where an appellant requested the court to undo one or more transactions that were integral parts of the plan of reorganization with the result that the confirmed plan would be void or materially altered. Such cases have nothing to do with the surgical relief that is sought by the Appellants here.

Debtors rely on *Delta Air Lines*, where the court found that it could not unwind financial transactions that had occurred because the objected-to releases were contained <u>within</u> an integrated settlement agreement.

> [T]o nullify the releases while leaving the remainder of the consummated Settlement intact would ignore the tradeoff that allowed the parties to settle in the first instance and would treat a non-severable provision of the Settlement Agreement as dispensable.

*In re Delta Air Lines, Inc.*, 374 B.R. at 523. Such is not the case here.

Similarly, the appeal in *Best Products* challenged enforcement of certain subordination agreements. *In re Best Prods. Co., Inc.*, 177 B.R. at 801. Rejecting the appellant's argument that a settlement and the enforcement of the subordination agreements were separate elements in the plan and not intertwined, the court found that the subordination agreements were an essential element of the plan that was inextricably interwoven with other elements of the plan. *Id.* As a result, the court found that the relief requested by the appellant would materially alter the plan. *Id.* at 802.

In *Loews Cineplex Entertainment Corp.* the appellant argued that:

> "[t]he Bankruptcy Court can easily fashion relief" by returning a portion of $45 million and by excising the releases and waivers of the Causes of Action.

*Lowes Cineplex Entm't Corp.*, 286 B.R. at 246.

The district court disagreed, stating:

> The Settlement was integral to the Plan and the relief requested by Appellant cannot be "easily fashioned." Moreover, as the Settlement was essential in the financing "necessary to enable the Debtors to emerge from chapter 11," granting the relief requested by Appellant would both affect the financing obtained and have definite repercussions for the transactions consummated in reliance thereon. "Consequently, it would be impossible to restore the pre-consummation *status quo* and, therefore . . . fashioning effective relief would be both impossible as well is inequitable.

*Id.* (internal citations omitted).

The district court quoted the declaration of the debtors' chief financial officer and treasurer that:

> [S]enior secured credit facility [was] obtained on the basis of the Settlement [and] "has been syndicated to a number of lending institutions, the proceeds of which are being used to finance the operations of the Reorganized Debtors.

*Id.* at 243 n.7 (identifying the declarant) and 246 (quoting the Declaration).

Here, there is no evidence whatsoever that depriving asbestos claimants of the right to pursue legitimate recoveries against all of the assets of Dana was integral to Plan financing. The relief sought by the Appellants would not alter Plan transactions nor would it affect the financing obtained by the Debtors.

### 4. No parties would be adversely affected by the relief sought — and, at any rate, all parties have received notice of this appeal.

As previously demonstrated, the relief sought by the Appellants will not affect any of the other parties in interest in these bankruptcy cases.  In any event, the Ad Hoc Committee filed its notice of this appeal on the electronic case filing system which automatically serves everyone who has electronically filed papers in the Debtors' bankruptcy cases and has provided notice of this appeal to and served Appellant's Brief on the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Note Holders, the United Auto Workers, the United Steel Workers, the Dana Retiree Committee, Centerbridge Partners LP, the lead investor in the Debtors exit facility and the United States Trustee.  Accordingly, all parties who could conceivably be affected by the relief sought by the Ad Hoc Committee have been provided with notice and an opportunity to participate in this appeal.

15

5.    **The Appellants failure to obtain a stay pending appeal does not render the appeal moot.**

As this Court has previously stated:

> A failure to secure a stay however, will not automatically make the party's claims moot [.]

*In re 1515 Broadway Assocs., L.P.*, 153 B.R. at 404. Numerous other courts agree with this Court's holding.  The Eleventh Circuit in *In re Club Assocs.*, 956 F.2d 1065 (11th Cir. 1992) found the issue before it moot but noted:

> Despite the appearance that a failure to obtain a stay is a blanket discharge of an appellate court's duty to review a bankruptcy court's confirmation order, the fact remains that the absence of a stay does not *compel* a finding of mootness *in all cases.*  "Failure to secure a stay is not *per se* dispositive of *all* the issues before" a reviewing court.

*Id.* at 1070 n.13 (emphasis in original) (internal citations omitted); *see also United Merchs. & Mfrs., Inc.*, 138 B.R. at 429 ("failure to obtain a stay pending appeal should not be determinative when effective relief remains available").

The relief sought by the Appellants does not affect any other parties nor affect any transactions or distribution made pursuant to the Plan and does not affect the Debtors' successful reemergence from Chapter 7.  Because effective relief remains available, Appellants' failure to obtain a stay pending this appeal does not render the appeal moot.

## V.
## REPLY IN SUPPORT OF APPEAL OF CONFIRMATION ORDER

A.    **ASBESTOS PERSONAL INJURY CLAIMS WERE IMPAIRED BY THE PLAN.**

Contrary to Debtors' assertions, the asbestos personal injury claimants are simply not in the same position that they were at the Petition Date.  Debtor's hypertechnical corporate

16

maneuverings to assure that the asbestos claimants will have the ability to "prosecute, and settle if they so choose, precisely the same claims and cases they possessed prior to the Petition Date against the same entities..." ignores economic reality.  Pre-petition Dana Corporation owned dozens upon dozens of subsidiaries with valuable assets.  No financial analyst or investor would consider the stripped down Dana Companies LLC to be the same company that existed pre-petition.

Furthermore, Debtors' assertion that the Plan's exculpation provision does not impair the asbestos personal injury claimants' rights is wrong.  Appelllees' Brief at 18-19.  In making this hollow argument, Debtors rely on the carve outs provided for asbestos personal injury claimants in the Plan's release and injunction provisions.  Appellees' Brief at 18-19.  However, Debtors ignore the fact that asbestos personal injury claims were not similarly carved out of the Plan's exculpation provision.  *See* Plan Section IV.E.7.  Absent such a carve out, in subsequent litigation the asbestos personal injury claimants will be confronted by the exculpation provision and will face the defense that they may not seek redress against any of the Released Parties for actions relating to the Restructuring Transactions that effectuated the asset-stripping of Dana Corporation.  Even with the so-called carve-outs, the asbestos personal injury claimants will be faced with challenges to their subsequent state court lawsuits against the Reorganized Debtors who may take the position that the Confirmation Order approved the offending movement of assets into new entities.  The proposed modification of the Confirmation Order merely precludes this unjust result.

If as Debtors assert, the Plan and Confirmation Order do not place the financial wherewithal of the prepetition Dana beyond the reach of the asbestos personal injury

claimants, then certainly Debtors would not object to a modification of the Plan explicitly carving out the asbestos personal injury claims, as suggested earlier in this Reply.

**B.     DEBTORS CANNOT OBTAIN THE BENEFITS OF SECTION 524(G) WITHOUT COMPLYING WITH THE REQUIREMENTS OF SECTION 524(G).**

Debtors woefully mischaracterize Appellants' arguments with respect to Section 524(g) of the Bankruptcy Code. Appellees' Brief at 19. Appellants do not now, and have never argued that Debtors must invoke Section 524(g) in order to effectively reorganize. Rather, Appellants argue that *Debtors' chosen Plan structure requires* them to comply with Section 525(g). The Plan creates two entities: Dana Limited – which holds the operating subsidiaries and has been cleansed of its asbestos liabilities – and Dana Companies LLC – which absorbs all of the Debtors' environmental and asbestos tainted assets and the attendant liabilities. In order to achieve this result, Debtors created a special class of asbestos claimants, even though this is not permitted except under Section 524(g). No matter how Debtors try to spin it, they have sought to achieve the very essence of the relief granted to debtors under Section 524(g). Congress specifically designed Section 524(g) to do exactly what Debtors have done in this case – create a separate legal entity to absorb all of the company's asbestos-related liabilities, while allowing the reorganized company to drive off into the sunset free of any asbestos concerns. Creative lawyering and corporate maneuvering cannot be used as an "end-run" around the requirements of Section 524(g). If Debtors want to absolve Dana Limited of asbestos liabilities in this fashion, then Debtors must comply with the requirements of Section 524(g).

**C.     THE PLAN IMPROPERLY CLASSIFIED ASBESTOS PERSONAL INJURY CLAIMS.**

Debtors rely on a single non-asbestos case for the proposition that claims may be separately classified when the debtor has a reasonable business justification for doing so. Appellees' Brief at 21 (quoting *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *47 (Bankr. S.D.N.Y. Oct. 31, 2008)). Debtors then cite this Court to three cases which Debtors claim stand for the proposition that separate classification of asbestos claims is routinely approved by courts. Appellees' Brief at 21. Every single one, however, was a case under Section 524(g) where Congress mandated separate classification of asbestos claim by Section 524(g)(2)(B)(ii)(IV)(bb) only in conjunction with a complex statutory scheme that allows those separately classified asbestos claimants specific protections, such as the requirement that the asbestos class approve the Plan by a supermajority (Section 524(g)(2)(B)(ii)(IV)(bb)) and only after the Court has appointed a future claims representative to protect the rights of future asbestos claimants (Section 524(g)(4)(B)(i)).

Moreover, Debtors' characterization of these Section 524(g) cases is misleading. Specifically, Debtors indicate that the court in *In re Armstrong World Industries, Inc.*, 348 B.R. 136 (D. Del. 2006), did not rely on Section 524(g) when it found that the debtor in that case had properly classified asbestos personal injury claims separately from other unsecured claims. Appellees' Brief at 21 (quoting in a parenthetical, *In re Armstrong World Indus., Inc.*, 348 B.R. at 159-60). However, close examination of the court's findings in *In re Armstrong World Indus., Inc.* reveals that the debtor sought relief from its asbestos liabilities under Section 524(g) and the court specifically noted that the separate classification of asbestos claims was mandated in that case by Section 524(g)(2)(B)(ii)(IV)(bb). *In re Armstrong World Indus., Inc.*, 348 B.R. at 160. Similarly, the other two cases relied on by Debtors, *In re Kaiser Aluminum Corp.*, No. 02-

19

10429(JKF), 7312, 2006 WL 616243 (Bankr. D. Del. 2006) and *UNARCO Bloomington Factory Workers v. UNR Indus., Inc.*, 124 B.R. 268 (N.D. Ill. 1990), were also bankruptcy cases in which the debtors sought relief from their asbestos liabilities under Section 524(g) of the Bankruptcy Code.   Appellees' Brief at 22 n. 48.   Thus, Debtors have not provided this Court with any authority that would support the separate classification of asbestos claims outside of a plan invoking the protections of Section 524(g).

### D.     THE PLAN DOES NOT PROVIDE IDENTICAL TREATMENT TO ALL ASBESTOS PERSONAL INJURY CLAIMS

Debtors' assertion that all asbestos personal injury claims receive the same treatment under the Plan because the Plan reinstates the asbestos personal injury claims and allow claimants to pursue their claims in the tort system ignores the very important fact that Debtors have set aside thousands of asbestos personal injury claims for special treatment.  *See* Appellees' Brief at 23.   These settled claims will receive payment from a pre-existing escrow-fund, while other claimants must pursue Dana Companies LLC in the tort system.   Such a structure clearly does not provide the same treatment for all claims in the same class.

Furthermore, because the terms of the settlement agreements were not disclosed to all Class 3 claimants, there is no way to verify Debtors' self-serving assertions that the settling asbestos personal injury claimants have agreed to less favorable treatment.  Appellees' Brief at 23-25. Simply stating that by "forgoing the right to litigate their Asbestos Personal Injury Claims against the Reorganized Debtors ... the settling Asbestos Personal Injury Claimants have agreed to *less* favorable treatment under the Plan" does not make it so.  Appellees' Brief at 24-25 (emphasis in original).  There is simply no way to tell. The fact that the Debtors went to such extremes to conceal the settlements from other Class 3 asbestos claimants leads to the

strong inference that the settling claimants received treatment that is different and superior to the treatment of the other asbestos claimants.  The mere fact that the thousands of claims secretly settled on the eve of confirmation are secured by an escrow fund establishes the unequal treatment that the Bankruptcy Code forbids.

## VI.
## CONCLUSION

For the foregoing reasons and those set forth in Appellant's Opening Brief, the Ad Hoc Committee respectfully prays that the Confirmation Order be VACATED, that the matter be REMANDED, and for any and all other relief to which the Ad Hoc Committee may be justly entitled.

Dated:  March 28, 2008                         Respectfully submitted,

                                               /s/ Douglas T. Tabachnik
                                               Douglas T. Tabachnik (DT 6337)
                                               LAW OFFICES OF
                                               DOUGLAS T. TABACHNIK, P.C.
                                               Suite C
                                               Woodhull House
                                               63 West Main Street
                                               Freehold, New Jersey 07728
                                               (732) 792-2760

                                               and

                                               Sander L. Esserman (SE 0356)
                                               Robert T. Brousseau (RB 4873)
                                               Jo E. Hartwick (JH 4109)

21

STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
(214) 969-4900

**ATTORNEYS FOR THE**
**AD HOC COMMITTEE OF ASBESTOS**
**PERSONAL INJURY CLAIMANTS**

22