# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | **x** **Chapter 11** |
| | **:** |
| | **:** |
| **DANA CORPORATION**, *et al.*, | **: Bankruptcy Case No. 06-10354 (BRL)** |
| | **: Jointly Administered** |
| | **:** |
| Debtors. | **:** |
| | **:** |
| **AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS and JOSÉ ANGEL VALDEZ,** | **:** |
| | **:** |
| | **:** |
| Appellants, | **: 1:08-CV-1037 (PAC)** |
| | **:** |
| v. | **; Judge Paul A. Crotty** |
| | **:** |
| **DANA CORPORATION**, *et al.*, | **:** |
| | **;** |
| Appellees. | **;** |
| | **x** |

---

## REPLY BRIEF OF APPELLANT JOSÉ ANGEL VALDEZ
## AND RESPONSE TO MOTION OF APPELLEES
## TO DISMISS AS MOOT THE CONSOLIDATED APPEALS

---

Alan Eric Gamza (AG 2014)
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York  10174-1299
Telephone:     (212) 554-7400
Facsimile:     (212) 554-7700
agamza@mosessinger.com


Joseph D. Frank (JF 6085) [*]
FRANK/GECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois  60610
Telephone:     (312) 276-1400
Facsimile:     (312) 276-0035
jfrank@fgllp.com

---

[*] Order granting admission to practice *pro hac vice* entered February 25, 2008 (District Court Docket No. 14).

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ ii

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

    I.       THE DOCTRINE OF EQUITABLE MOOTNESS DOES NOT APPLY. ..................... 1

    II.      THE DEBTORS' PLAN IMPAIRED THE ASBESTOS CLAIMANTS. .................... 6

        A.    The non-impairment finding ignores the provisions of 11 U.S.C. § 1124 ..................... 6

        B.    The Debtors used purported non-impairment to gerrymander. ....................... 9

    III.    THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN FINDING THE PLAN WAS FEASIBLE AND FAILED TO PROVIDE ANY REASONED ANALYSIS TO SUPPORT ITS FINDING. ................................................................................................. 10

        A.    The Bankruptcy Court relied on expert testimony that is contrary to Prevailing Law .. 10

        B.    The Bankruptcy Court's erroneous evidentiary rulings resulted in the undervaluing of asbestos liabilities. ................................................................................................................. 12

        C.    The Bankruptcy Court erred in the valuation of assets available to pay asbestos claims. 13

        D.    The Bankruptcy Court's Order is in error and lacks sufficient support. ....................... 15

    IV.    THE SEPARATE CLASSIFICATION OF ASBESTOS CLAIMS WAS IMPROPER. 17

    V.     THE DEBTORS FAIL THE "BEST INTEREST" TEST. ........................................... 18

CONCLUSION ........................................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Church of Scientology v. United States,* 506 U.S. 9 (1992)............................................................ 1

*Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.),* 10 F.3d 944 (2nd Cir. 1993)............. 4

*In re Adelphia Communications Corp.,* 368 B.R. 140 (Bankr. S.D.N.Y. 2001) ......................... 19

*In re Am. Solar King, Corp.* 90 B.R. 808 (Bankr. W.D. Tex. 1988) ............................................. 6

*In re Armstrong World Indus., Inc.,* 348 B.R. 136 (D. Del. 2006) ................................................ 17

*In re Atlantic Terrace Apartment Corp.,* 226 B.R. 535 (Bankr. E.D.N.Y. 1990).......................... 6

*In re Calpine Corp.,* 2007 WL 4326738 (S.D.N.Y. Nov. 21, 1007) (slip copy) .......................... 16

*In re Dana Corp.,* 2007 WL 4589331 (Bankr. S.D.N.Y. December 26, 2007)............................ 15

*In re Johns-Manville Corp.,* ___ F.3d ___, 2008 WL 399010 (2nd Cir. February 15, 2008) ...... 17

*In re Kaiser Aluminum Corp.,* No. 092-10429 (JKF), 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006) ......................................................................................................................................... 18

*In re Karta Corp.,* 342 B.R. 45 (S.D.N.Y. 2006) .......................................................................... 3

*In re New Midland Plaza Assoc.,* 247 B.R. 877 (Bankr. S.D. Fla. 2000)...................................... 6

*In re Quigley Co., Inc.,* __ B.R. __, 2008 WL 495646 (Bankr. S.D.N.Y. February 26, 2008) ... 11, 18

*In re Quigley Co.,* No. 04-15739 (SMB), 2007 WL 3077310 (Bankr. S.D.N.Y. Oct. 23, 2007). 18

*In re Shea and Gold,* 214 B.R. 739, 750 (Bankr. S.D.N.Y. 1997) ............................................... 20

*In re Spiegel, Inc.,* 2007 WL 2456626 (S.D.N.Y. August 22, 2007) (slip copy) ......................... 16

*In re Spirited, Inc.,* 23 B.R. 1004 (Bankr. E.D. Pa. 1982) ............................................................ 6

*In re United States Lines, Inc. (Asbestosis Claimants v. U.S. Lines Reorganization Trust),* 318 F.3d 432 (2nd Cir. 2003) ............................................................................................................. 3

*Metromedia Fiber Network Inc.,* 416 F.3d 136 (2nd Cir. 2005) ............................................... 3, 4

*Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co., Inc. v. Official Comm. Of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp),* 988 F.2d 322 (2nd Cir. 1993).................................................................................................................... 3, 4

*South St. Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.),* 94 F.3d 775
(2nd Cir. 1996) ................................................................................................................ 2

*UNARCO Bloomington Factory Workers v. UNR Indus., Inc.*, 124 B.R. 268 (N.D. Ill. 1990) .... 18

**STATUTES**

11 U.S.C § 1124(2) ............................................................................................................ 7

11 U.S.C. § 1124 .......................................................................................................... 7, 8

11 U.S.C. § 1124(1) ........................................................................................................... 7

11 U.S.C. § 1126(f) ........................................................................................................... 9

11 U.S.C. § 1129(a)(11) .................................................................................................... 5

11 U.S.C. § 1129(a)(7) ..................................................................................................... 18

11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb) ............................................................................... 18

**OTHER AUTHORITIES**

H. R. Rep. 103-835, 1994 U.S.C.C.A.N. 3340 *40-41 ..................................................... 18

S. Rept. No. 95-989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 120 ........................ 7

## INTRODUCTION

Last December, Dana Corporation and its related entities (collectively, "Dana" or the "Debtors") asked the Bankruptcy Court to stray from the confines of the Bankruptcy Code and apply a novel and unsupportable use of claim "reinstatement" to silence the voices of over 100,000 asbestos claimants.[1]  The Bankruptcy Court acquiesced.  Now, Dana asks this Court to alter the rules of appellate procedure in favor of the doctrine of "equitable mootness" and silence this appeal.  This Court should not acquiesce.  The Bankruptcy Court erred by ignoring the statutory limitations imposed by the Bankruptcy Code and by rubberstamping Dana's Plan without providing any reasoned analysis of its own.  This Court should not permit that decision to remain unreviewed.  Fairness, equity and basic appellate principles demand otherwise.

## ARGUMENT[2]

### I.     THE DOCTRINE OF EQUITABLE MOOTNESS DOES NOT APPLY.

The doctrine of equitable mootness is neither codified by Congress nor accepted by the United States Supreme Court.  The Supreme Court only recognizes that a case is moot and must be dismissed where a court is powerless to afford effective relief of any kind.  *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992).  A case is not moot where a court enjoys the ability to award even partial relief.  *Id.* at 12 – 14.  This is such a case.

In this case, the Court can provide complete relief or, at least, fashion partial and meaningful relief to Mr. Valdez and over 130,000 other asbestos claimants who have been treated in a manner not sanctioned by the Bankruptcy Code.  (Rec. 18, Attachment, p. 2).  If it so chooses, the Court may reverse the Confirmation Order and require the Bankruptcy Court and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Brief of Appellant José Angel Valdez, filed on February 19, 2008 (the "Brief").

[2] In order to conserve space and avoid repetition, Appellant, in addition to his argument, adopts the reply brief and response to the motion to dismiss filed by the Ad Hoc Committee of Asbestos Personal Injury Claimants in this consolidated appeal.

the Debtors to simply undo as much as possible of the Debtors' post-confirmation transactions, which were all completed by an investor and lenders with knowledge that the Confirmation Order was not final.  However, even if the Court finds that it is too late to annul the post-confirmation financing and restructuring transactions and allow asbestos claimants to vote on the Plan, it is not too late to modify the Plan and allow the asbestos claimants to assert their claims against Dana Holdings Corporation and the other operating businesses that have emerged from the bankruptcy.  Despite the Debtors' assertions to the contrary, the clear intent of the Plan was to isolate the Debtors' asbestos creditors and certain environmentally-contaminated property from the Debtors' revenue-producing business assets, and prevent the asbestos claimants from reaching those revenue-producing business assets post-confirmation.  To remedy the impairment of the asbestos claims under the Plan, this Court can remand for modification of the Plan to allow the asbestos claimants to satisfy their claims from the assets of all of the entities that have emerged from the bankruptcy, just as they could before Dana availed itself of the shelter of the Bankruptcy Court.

The Debtors urge this Court to ignore the merits of this appeal under the doctrine of "equitable mootness."  Some circuit courts of appeal have strayed beyond the doctrine of constitutional mootness recognized by the Supreme Court, and have applied the concept of "equitable mootness" to confirmed plans of reorganization under Chapter 11 of the Bankruptcy Code.  The United States Court of Appeals for the Second Circuit has recognized that equitable considerations may render a bankruptcy appeal moot, even though effective relief could conceivably be fashioned, if implementation of that relief would be inequitable.  *See*, *e.g. South St. Seaport Ltd. Partnership v. Burger Boys, Inc. (In re Burger Boys, Inc.),* 94 F.3d 775, 759 (2nd Cir. 1996); *Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co., Inc.*

*v. Official Comm. Of Unsecured Creditors of LTV Steel Co., Inc. (In re Chateaugay Corp),* 988 F.2d 322, 325 (2nd Cir. 1993).  While the Second Circuit approves the doctrine of equitable mootness, the Second Circuit does not mandate its use.

As a doctrine of equity, equitable mootness remains subject to the maxim that one who seeks equity must do equity.  *In re United States Lines, Inc. (Asbestosis Claimants v. U.S. Lines Reorganization Trust),* 318 F.3d 432, 437 (2nd Cir. 2003).  Here, Mr. Valdez timely appealed nine days after the Bankruptcy Court entered its Confirmation Order (Rec. 30, 34).[3]  Although the Confirmation Order was not final pending resolution of this appeal, the Debtors nonetheless purposefully sought to moot this appeal by consummating the restructuring transactions while the appeal was pending.  Indeed, Dana cavalierly presented as "evidence" during the Confirmation Hearing the fact that its investor and the three financial institutions that were funding the reorganized debtor would fund while any appeals were pending and waive entry of a final order as a pre-condition to the Plan becoming effective and triggering their obligations.  *See* Transcript of Proceedings, 12/11/07 Tr. at 232:21-233:19.[4]

Under identical circumstances, appellate courts have found that the debtor's conduct precluded dismissal on equitable grounds.  *See, e.g., In re Karta Corp.,* 342 B.R. 45, 53 (S.D.N.Y. 2006).  In *Karta*, the court first found that the Second Circuit has held that seeking a stay pending appeal is not a precondition to avoiding dismissal on the ground of equitable mootness.  *Id. citing Metromedia Fiber Network Inc.,* 416 F.3d 136, 144-45 (2nd Cir. 2005).  Instead, the *Karta* court found that where the debtors consummated their reorganization transactions prior to the confirmation order becoming final, "[t]hey do not stand in a superior

---

[3] References to Appellant's Designation of Content of Record on Appeal shall be designated as ("Rec. ___"), and, if applicable, paragraph (Rec. __, ¶ __), page (Rec.__, P.__), or exhibit (Rec.__, Ex. __).

[4] References to the transcript from the Confirmation Hearing, designated as Record Nos. 29, 32 and 33, will be by date, "Tr." and the page and line number(s) cited.

equitable position to Appellant, and so are not entitled to dismissal of this on equitable grounds."
*Id.* Like the quick-to-consummate debtors in *Karta*, the Debtors do not stand in a superior equitable position to Mr. Valdez. The Debtors should not be heard to say it is inequitable to fashion relief for the asbestos claimants based on the settled expectations of the Debtors and their lenders, where the Debtors and their lenders and investor purposefully sought to moot this appeal, and proclaimed their intent to the Bankruptcy Court to waive their right to delay funding until the Confirmation Order was final.[5]

Even if this Court were to decide that the Debtors are entitled to application of the "equitable mootness" doctrine, this Court can grant relief to Mr. Valdez that complies with the standards set forth in *Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 952-53 (2nd Cir. 1993). First, as recognized by the *Karta* court, seeking a stay is not a *per se* prerequisite to avoid mooting an appeal. In the absence of a stay, the standard in the Second Circuit is whether the court can provide relief without unraveling the plan, and whether the court should provide such relief in light of fairness concerns. *Metromedia Fiber Network, Inc.*, 416 F.3d at 145. In this case, the Court can easily grant relief to Mr. Valdez that does not unravel the Plan, but preserves vestiges of the treatment he would be entitled to if the Plan had complied with the Bankruptcy Code, by preserving his cause of action against the operating entities that have emerged from bankruptcy.

The fact that Dana may have substantially consummated the Plan does not prevent this Court from ordering such relief. Modifying the Plan to preserve Mr. Valdez's cause of action

---

[5] Without citation to any record, the Debtors offer further support for their position by boasting that they are "the first multi-billion dollar enterprise to emerge from Chapter 11 under the abbreviated timetable established by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005." Appellee's Brief (i) In Support of Motion of Appellees to Dismiss as Moot the Consolidated Appeals of Ad Hoc Committee and Asbestos Personal Injury Claimants and José Angel Valdez and (ii) on the Merits of the Consolidated Appeal (the "Dana Brief"), at p. 4, fn. 10. The desire to achieve this questionable goal is no basis for disregarding the constraints of the Bankruptcy Code.

against all of Dana's assets (as he had before the bankruptcy) should neither impact the Debtors'
emergence from bankruptcy nor unravel the Debtors' post-confirmation transactions.    The
Debtors assert repeatedly that Dana Companies LLC is adequately funded to pay all asbestos
claims well into the future, even though it is a shell company capitalized with a tarnished
assortment of non-operating assets.  Dana Brief at pp. 17, 29-30.  Therefore, the financial impact
of recombining those claims and assets with the operating entities should be a wash with no
impact on the assets of the operating entities.  The Debtors cannot assert that Dana Companies
LLC, as a stand-alone entity, satisfies the feasibility requirement of 11 U.S.C. § 1129, but that a
recombination of Dana Companies LLC with the operating entities would have devastating
impact.  Such contradictory positions amount to an admission that the Plan does not satisfy 11
U.S.C. § 1129(a)(11) and that this Court should reverse.

The same facts overcome the Debtors' position that a recombination would adversely
affect parties without notice.  First, it is notable that the investors and lenders chose to fund their
obligations with full knowledge that an appeal was pending and also agreed to waive the
requirement of a final order as a condition of their funding even before the Bankruptcy Court
confirmed the Plan.  12/11/2007 Tr. at 232:21-233:19.  These actions overcome any allegation of
harm to parties without notice.   More importantly, however, if Dana Companies LLC is
adequately funded, as the Debtors maintain, a recombination would have no adverse effect on the
other parties to the transactions that have taken place since Plan confirmation.

The doctrine of equitable mootness has no place in this case, where failure to entertain
the appeal would only continue the inequities perpetrated by the Debtors.  Inequity would be to
allow the Debtors to confirm their Plan without any participation by the asbestos claimants.
Inequity would be to allow the Debtors to deem the claims of the asbestos claimants unimpaired

while divesting the asbestos claimants of the pre-petition remedies they had against the Debtors'

operating businesses.  Inequity would be to allow the Debtors to silence the voices of the

asbestos claimants once again before this Court.

## II.    THE DEBTORS' PLAN IMPAIRED THE ASBESTOS CLAIMANTS.

### A.    The non-impairment finding ignores the provisions of 11 U.S.C. § 1124.

Debtors and bankruptcy courts do not constitute a legislature.  They cannot modify the

laws and rules of the Bankruptcy Code to deprive creditors of their statutory rights.  Under the

Bankruptcy Code, creditors are impaired if they are not paid in full, with interest, on the effective

date of the plan.  *In re New Midland Plaza Assoc.*, 247 B.R. 877, 896 (Bankr. S.D. Fla. 2000).

Under the Debtors' Plan, asbestos claimants were separately classified and deemed unimpaired

because their claims would be "reinstated" on the Effective Date.  (Rec. 2, Art. II.B.6.); Dana

Brief at p. 21.  The Debtors' use of "reinstatement" is not authorized by the Bankruptcy Code

and was not contemplated by Congress as a method for rendering unsecured creditors

unimpaired. [6]

---

[6] In their brief, the Debtors argue that *In re Spirited, Inc.*, 23 B.R. 1004 (Bankr. E.D. Pa. 1982), a case cited by Mr. Valdez for the proposition that "[t]he mere recognition or non-cancellation of a class of claims or interests is not sufficient to render a class unimpaired under § 1124(1)" (Brief, at 9) was "conclusively demolished" by the court in *In re Am. Solar King, Corp.* 90 B.R. 808 (Bankr. W.D. Tex. 1988).  In fact, *Solar King's* rejection of the principal espoused in *Spirited* was limited to the assertion that "Stockholders, for example, have only a right to share in the company's good fortunes and . . . only if the board of directors authorizes stock redemption or dividends.  To the extent that *In re Spirited* requires affirmative payment or compensation of stockholder claims in order to render such claims unimpaired under Section 1124, the case is simply wrong."  *Solar King*, 90 B.R. at 821, fn. 18.  Here, the asbestos claimants are not speculators with a right only to enjoy a company's good fortune.  They are creditors who suffer debilitating and fatal illnesses due to exposure to the Debtors' products.  To the extent the Debtors rely upon *Solar King* to simultaneously deny these creditors any provision for payment and declare that they are unimpaired, they are simply wrong.  Indeed, as the *Solar King* court recognized, "even the smallest impairment nonetheless entitles a creditor to participate in voting."  *Id.* at 819-820.  Similarly, the Debtors' argument that citation to *In re Atlantic Terrace Apartment Corp.*, 226 B.R. 535 (Bankr. E.D.N.Y. 1990) "borders on disingenuous" because that case involves a single-asset bankruptcy demonstrates ignorance of the Bankruptcy Code.  Dana Brief at p. 16, fn. 35.  *Atlantic Terrace* is cited for its interpretation of 11 U.S.C. § 1124, which has no different application in a single-asset bankruptcy.  The premise of *Atlantic Terrace* is that "'impairment' is a term of art created by Congress ...." and that term of art refers to any change in what a creditor has before and after a bankruptcy, whether it is better or worse.  *Atlantic Terrace*, 226 B.R. at 538.  This interpretation means a creditor gets to vote on a plan if it receives anything different than it had before the bankruptcy.  A creditor cannot be silenced just because a debtor or a bankruptcy court thinks it is better off than it was before.

Section 1124 of the Bankruptcy Code specifies two ways a plan may leave a claim unimpaired. First, the plan may propose not to alter the legal, equitable or contractual rights to which the claim entitled its holder. 11 U.S.C. § 1124(1). Second, a plan may propose to reinstate a claim by curing any default, reinstating the maturity of the claim, and not otherwise altering any legal, equitable or contractual rights to which the claim entitled its holder. 11 U.S.C § 1124(2). Section 1124(2) is the only provision of the Bankruptcy Code that uses the term "reinstates" with respect to claims. Congress explained its intent in providing for reinstatement as a means to avoid impairment of a claim:

> [A] claim or interest is unimpaired by curing the effect of default and reinstating the original terms of an obligation when maturity was brought on or accelerated by the default. The intervention of bankruptcy and the defaults represent a temporary crisis which the plan of reorganization is intended to clear away. The holder of a claim or interest who under the plan is restored to his original position, when others receive less or get nothing at all, is fortunate indeed and has no cause to complain. Curing of the default and the assumption of the debt in accordance with its terms is an important reorganization technique for dealing with a particular class of claims, especially secured claims.

S. Rept. No. 95-989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 120. Congressional intent could not be clearer. Reinstatement with its references to curing defaults and reinstating maturity was intended for secured claims and similar credit obligations, not tort claimants, as a method to undo acceleration of a debt that would otherwise make it more difficult for a debtor to reorganize.

In fact, the Debtors' Plan does not "reinstate" the asbestos claims, but, instead, "passes through" the asbestos claims. (Rec. 18, at 3; Attachment, p. 1).[7] The Debtors have not cited a single case where a court has confirmed a plan that provides no treatment other than "pass through" for the claims of tens of thousands of asbestos victims. If this "pass through" truly left

---

[7] The frank acknowledgement that the treatment is a "proposed pass through" rather than a "reinstatement" comes from William R. Hanlon, a member of Dana's "national [asbestos] defense team," who may not have been sensitive to the non-impairment needle that Dana hoped to thread. (Rec. 18, at 2, ¶ 5; Attachment, p. 1).

asbestos claims unimpaired, the asbestos claimants would have the same rights and remedies post-petition as they had pre-petition. Here, they clearly do not.

Prior to bankruptcy, an asbestos victim could obtain a judgment and enforce that judgment against Dana Corporation, an operating, cash-generating conglomerate. After bankruptcy, an asbestos victim may still obtain a judgment, but that judgment only can be satisfied by insurance policies and a handful of tarnished assets that have been transferred to the non-operating Dana Companies, LLC. The testimony at the Confirmation Hearing was unequivocal: the operating entities will have no prepetition asbestos liability going forward. 12/10/2007 Tr. at 109:25-110:5, 138:5-138:16.[8]

Even the Bankruptcy Court acknowledged this fact at the conclusion of the Confirmation Hearing when it found that the asbestos claimants were not impaired because "they have pretty much, post-confirmation, what they had before." 12/12/2007 Tr. at 95:19-25. The test for impairment is not whether the claimant has "pretty much" the same legal and equitable rights, but whether the claimant retains all of the same legal and equitable rights. 11 U.S.C. § 1124. Even the Debtors acknowledge this standard when they describe Mr. Valdez and the other appellants as "a creditor constituency left *wholly unaffected* by the Reorganized Debtors' restructuring . . ." (Dana Brief at p. 4, emphasis in original). This statement – which ignores reality and is undeniably wrong - tacitly acknowledges that the Bankruptcy Court erred by finding non-impairment based on the "pretty much" standard found nowhere in the Bankruptcy Code.[9]

---

[8] The Debtors' protestations to the contrary, that "the Plan's releases and injunctions are *expressly inapplicable* to Asbestos Personal Injury Claims," is meaningless. (Dana Brief at pp. 15-16, emphasis in original). The Debtors' own statements at trial make clear that the restructuring and the Confirmation Order will be used to shield the operating entities from the Debtors' historic asbestos liability. The Debtors do not dispute this fact.

[9] Further case law on this issue is set forth in the Brief and in great detail in the Brief of Appellant The Ad Hoc Committee of Asbestos Personal Injury Claimants (the "Ad Hoc Committee Brief") at pp. 7-9.

**B.    The Debtors used purported non-impairment to gerrymander.**

Moreover, Dana's attempt to re-write the Bankruptcy Code so it could deem the asbestos claims unimpaired was done purposefully to gerrymander creditor classes and disenfranchise asbestos claimants.  Unimpaired creditors may not vote on a plan of reorganization.  11 U.S.C. § 1126(f).  While there is no dispute that over 130,000 asbestos claims had been asserted against the Debtors prior to the Petition Date (12/11/2007 Tr. at 20:2-6 and Rec. 18, Attachment, p. 2), the Debtors solicited votes from only four classes of claims and the Debtors received votes from a mere 2,335 claimants.  (Rec. 14, ¶ 7).  By circumventing the Bankruptcy Code, the Debtors were able to confirm a plan without the consent or participation of their largest creditor constituency.  With the acquiescence of the Bankruptcy Court, the Debtors strayed far from the clear provisions of the Bankruptcy Code in order to deem asbestos claimants unimpaired and preclude their largest creditor constituency from voting.

In the end, the Debtors' efforts to deem the claims of the asbestos claimants unimpaired rests on an unsupportable syllogism:  the asbestos victims had claims against Dana before the bankruptcy, and the asbestos victims will have the same claims against Dana after the bankruptcy.  But that Dana is not the same Dana after the bankruptcy.  The Debtors transferred all of their operating entities to Dana Ltd. and Dana Holdings Corporation, while Dana Companies LLC retained the asbestos and environmental liabilities, some insurance policies and a few other assets of uncertain value.  The asbestos claimants may still liquidate their claims, but they are left to satisfy their judgments from a dwindling and uncertain pool of insurance and other assets.  The Bankruptcy Court found this to be "pretty much" what the asbestos claimants had before.  In reality, "pretty much" is not much at all.  Even if it were "pretty much," it is much less than Mr. Valdez is entitled to under the Bankruptcy Code.

## III.   THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW IN FINDING THE PLAN WAS FEASIBLE AND FAILED TO PROVIDE ANY REASONED ANALYSIS TO SUPPORT ITS FINDING.

Courts apply the laws as they exist and give reasoned explanations for their rulings. Bankruptcy courts are no exception.  The noble goal of reorganizing a financially-troubled debtor is not reason for a bankruptcy court to relinquish control of the bankruptcy process to the debtor.  Here, the Bankruptcy Court did just that.

The Bankruptcy Code required the Bankruptcy Court to make an independent determination that the Plan was feasible.  11 U.S.C. § 1129.  A plan is feasible if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. §1129(a)(11).  For the asbestos claimants, the Plan only is feasible if the reorganized entity responsible for the asbestos liabilities, Dana Companies, LLC, will have sufficient assets to pay all of the asbestos liabilities, in full, as they come due.[10]  The key, then, to determining the feasibility of this Plan, was the amount of the projected asbestos liabilities and their relationship to the limited assets that will capitalize Dana Companies, LLC.

### A.   The Bankruptcy Court relied on expert testimony that is contrary to Prevailing Law.

The Bankruptcy Court heard expert testimony from two witnesses, Dr. Robin Cantor, the expert retained by Dana, and Dr. Thomas Vasquez, the expert retained by the Official Committee of Unsecured Creditors, which, in fact, also supported Plan confirmation.  Without any explanation or analysis, the Bankruptcy Court simply accepted the testimony of Dr. Cantor. (Rec. 30, p. 20-21).  That testimony, however, was wrong as a matter of law.  In projecting the

---

[10] The finding of non-impairment raises the feasibility bar because it requires the Court to find it likely that all asbestos claimants will be paid in full.

future asbestos liability in two separate reports, Dr. Cantor assigned no value to some or all non-malignant asbestos claims in "tort reform" states where the claimants cannot immediately prosecute their claims.[11]   However, Chief Bankruptcy Judge Stuart M. Bernstein recently ruled that such disregard for this sort of claim must fail.  *In re Quigley Co., Inc.,* __ B.R. __, 2008 WL 495646 (Bankr. S.D.N.Y. February 26, 2008).

In *Quigley,* Judge Bernstein framed the issue as whether an asbestos claimant whose right to payment is not presently enforceable under state law nevertheless holds a bankruptcy claim. *Id.* at *3.   The *Quigley* court answered that question with a resounding "yes."   "The broad definition [of claim] was intended to reach all legal obligations, no matter how remote, and deal with them in the bankruptcy case."   *Id.* at *3.   Asbestos claims were no different.   "[A]n

---

[11] Dr. Cantor's first report explained her approach as follows:

> Dana has received 150,114 claims that are unresolved or pending, as of the date of this report.  However, it is known that 16,144 of those claims are on the inactive docket in New York because the claimant has not met the Court's impairment criteria.  Based on our experience in tracking such claims, we consider it highly unlikely that these claims will become active in the future.  The projection of liabilities that arise from the pending claim population is therefore performed on the remaining 133,970 pending claims.

> Further discussions with Dana personnel and settlement consultants indicate that there are an additional 67,317 claims filed in other jurisdictions with inactive dockets or medical criteria which render them unlikely to become active, compensable claims.  A review of the pending claims, the jurisdictions in which they are filed, and the additional information provided by settlement consultants, indicates that of Dana's 133,970 pending claims, 66,653 are expected to be active and potentially compensable.

> *   *   *   *

> As mentioned previously, Dana has a large number of "inactive" claims as part of the pending claims.  For purposes of the R2 calculation, those inactive claims are considered dismissed.  However, it is likely that at least some portion of these inactive claims will be paid at some point in the future.  If that is the case, a second R2 must be calculated, R2b.  In calculating the R2b rate, we assume that 30% of the inactive claims will be re-opened in the future, a conservative assumption given the relatively small number of claims in Dana's historical experience to date that have actually been reopened.

Expert Report of Dr. Robin Cantor, February 2007 (Rec. 40, Debtors' Trial Exhibit 34, at 14-15).  Dr. Cantor's testimony is, at best, unclear as to how many asbestos claims she did not count because they were "inactive" in preparing her second report, which was relied upon by the Debtors and the Bankruptcy Court.  (Rec. 30, pp. 20-22.)  It is entirely clear that at least 16,144 claims and, in some cases, as many as 96,793 claims, were not counted in her forecasts because they were "inactive."  *See* Expert Report of Dr. Robin Cantor, November 2007 (Rec. 40, Debtor's Trial Exhibit 35 at pp. 14 (Table 7:  Dana Acceptance Rates – Including All Inactive as Resolved), 20 and 24 (Appendix A)); 12/11/2007 Tr. at 123:12-126:14.

Asbestos PI Claimant's pre-petition exposure to asbestos gave rise to a 'claim' regardless of whether the law of any particular state renders the cause of action unenforceable until some future contingency occurs." *Id.* at *6. As Judge Bernstein explained, "[t]he Tort Reform Statutes, like the analogous case management orders, represent efforts to control the flood of asbestos litigation, and give preferences to the truly impaired by deferring the prosecution of claims held by the unimpaired." *Id.* at 8. Claimants who are presently deferred from prosecuting their claims still have claims which they will prosecute in the future.[12] By accepting Dr. Cantor's testimony, without any explanation or analysis, the Bankruptcy Court erred. The finding of feasibility by the Bankruptcy Court had to account for the asbestos claims presently subject to deferred dockets, but did not. Instead, the Bankruptcy Court relied upon Dr. Cantor's mistaken disregard for some or all of the presently deferred claims and incorrectly concluded that the Plan is feasible. (Rec. 30, p. 21).

### B.    The Bankruptcy Court's erroneous evidentiary rulings resulted in the undervaluing of asbestos liabilities.

The incorrect approach to valuing the Debtors' asbestos liability was exacerbated by the Bankruptcy Court's improper evidentiary rulings. The Debtors make much of the fact that the Court heard evidence from ten witnesses and that "the majority of the testimony was devoted to the asbestos plan objections" (Dana Brief at 5, 28) and try to minimize the impact of the evidentiary rulings and restrictions by arguing that Valdez tries to "dress up one isolated example of the Bankruptcy Court taking issue with the relevance of Appellants' evidence." Dana Brief at p. 28. In fact, Mr. Valdez's counsel was repeatedly hampered by the Bankruptcy Court in his effort to present only <u>two</u> witnesses in response to the eight witnesses presented by the Debtors.

---

[12] Even the Debtors acknowledge this fact: "Asbestos Personal Injury Claims classified as 'inactive' are unlikely to be the subject of litigation or payment unless or until the holders of such claims . . . develop an asbestos-related malignancy." Dana Brief at pp. 7-8, fn. 16. Nonetheless, Dr. Cantor and the Debtors persisted in referring to them as "resolved by Dana without payment" (*Id.*) even though they had not been resolved at all.

These improper judicial obstacles included an entirely improper restriction on the time allowed for direct examination of one witness to 15 minutes. 12/11/2007 Tr. at 218:23-219:1; 226:3-228:21. The Court repeatedly raised and sustained its own objections to testimony or prohibited introduction of a directly responsive exhibit, thereby preventing substantial evidence contrary to the Debtors' rationale for estimating its asbestos liability. The Court made such rulings in the few minutes allowed to Mr. Valdez's counsel for examination of one of his two witnesses.[13]

### C.    The Bankruptcy Court erred in the valuation of assets available to pay asbestos claims.

The Debtors take a similar misleading approach in their argument with respect to the Bankruptcy Court's unsupported determination as to the value of the assets contributed to Dana Companies LLC. Mr. Valdez does not contend that the feasibility standard under section 1129(a)(11) requires a guarantee of success (Dana Brief at 25), but it does require a reasoned basis for determining that a reorganized debtor is adequately capitalized so that confirmation is "not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . ." 11 U.S.C. § 1129(a)(11). The questions regarding the assets used to capitalize Dana Companies LLC remain unanswered by the testimony cited in the Debtors' brief. For example, the Debtors claim that Mr. Valdez's reference to the testimony of Mr. Hanlon, who said, "[y]our guess is as good as mine" when asked about the timing of a payment from GAF Corporation, is "thoroughly misleading" because it concerns a "discrete issue." Dana Brief at p.

---

[13] These rulings on the Bankruptcy Court's own objections by Debtors' counsel can be found at 12/11/2007 Tr. at 224:19-225:4; 225:9-226:6; 226:19-24; and 227:1-17. They stand in direct contrast to evidence presented by the Debtors on the nature of their asbestos liability and the merits of their appeal of the *Hicks* judgment. *See* 12/10/2007 Tr. at 235:3-11; 242:22-243:2. Moreover, Dr. Cantor relied on information provided by the Debtors in her November 2007 report: "I understand from Dana representatives that its asbestos exposure is derived primarily from gasket products sold for transportation applications." (Rec. 18, Debtors' Exhibit 35, at p. 17). The Bankruptcy Court improperly refused evidence on this issue from Mr. Valdez's witness.

27, fn. 56.  However, it is the Debtors who would mislead the Court, as the citation to Mr. Hanlon's testimony in the Valdez Brief demonstrates that two separate receivables worth millions of dollars are both subject to some level of dispute or impediment to collection and remain uncertain.  Valdez Brief at 14; 12/11/2007 Tr. at 30:24-31:16; 33:5-40:5.  Hanlon, an attorney who describes himself as "a member of [Dana's] national defense team" (Rec. 18, p. 2, ¶ 5), clearly testified that the Debtors' contribution of certain reimbursement obligations to Dana Companies LLC are speculative as to value and timing.  However, in preparing the balance sheet for Dana Companies LLC that was offered in support of feasibility, those assets were booked at their $13 million face value without consulting Mr. Hanlon as to when they might be collected. 12/10/2007 Tr. at 220:1-221:24; (Rec. 38).

Similarly, Valdez does not argue, as the Debtors insist, that "a parade of hypothetical horribles" must come to pass before Dana Companies LLC will fail.  Dana Brief at p. 25. Instead, the Debtors admitted that they capitalized Dana Companies LLC with just enough cash and assets to meet their own liability projections.[14]  *See* 12/10/2007 Tr. at 177:16-179:8; (Rec. 38).  Therefore, a slight miscalculation as to the value of any asset renders Dana Companies LLC's balance sheet insolvent upon emergence from bankruptcy.  Given the questionable value of the assets, as acknowledged by the Debtors' own witnesses, Messrs. Stenger and Hanlon, the horribles are not hypothetical and it would take only one, not a parade, to doom this Plan to failure.

---

[14] The Debtors argue that Valdez fails to rebut Stenger's testimony (Dana Brief at p. 26, fn. 55), which misses the point.  Stenger's valuations are speculative by his own repeated admission. 12/10/2007 Tr. at 157:24-158:14; 162:4-14.  No rebuttal is necessary, as such speculation is not enough to establish value for purposes of showing feasibility.

**D.     The Bankruptcy Court's Order is in error and lacks sufficient support.**

At the conclusion of the Confirmation Hearing, on December 12, 2007, the Bankruptcy Judge immediately ruled and confirmed the Plan. The Bankruptcy Judge devoted two sentences to his finding on feasibility: "I would also find that the plan is feasible, fair, and equitable, and it does meet the best interest test. The plan, this record supports a finding that it has a reasonable assurance of success." 12/12/2007 Tr. at 95:4-7. The Bankruptcy Judge then invited Dana's counsel to submit an appropriate order. 12/12/2007 Tr. at 96:1-5.

On December 21, 2007, Dana filed a 68-page proposed order.[15] Five days later, on December 26, 2007, the Bankruptcy Judge entered and published the order *verbatim*. *In re Dana Corp.*, 2007 WL 4589331 (Bankr. S.D.N.Y. December 26, 2007). Not surprisingly, Dana's order contains far more extensive "findings" than those made by the Bankruptcy Court on the record. With the Debtors as its ghost writer, the Bankruptcy Court finds:

> It is not necessary for this Court to forecast the exact amount of Reorganized Dana's future costs for asbestos liabilities for the purposes of confirming this Plan and determining that the Plan is feasible. This is so because, in addition to Dana's substantial available insurance resources of approximately $1.5 billion, Reorganized Dana's initial capitalization of $195 million … is more than sufficient to cover the range of reasonable forecasts described above. . . . Based on all the foregoing, the Court finds that the Plan presents a workable scheme of reorganization from which there is a reasonable assurance of success and is, thus, feasible and satisfies section 1129(a)(11) of the Bankruptcy Code.

(Rec. 30, p. 25). Such a reference to insurance coverage of $1.5 billion is purposefully misleading and demonstrates the Bankruptcy Court's misapprehension of the facts because the Debtors acknowledge that much of this coverage is not available to pay asbestos claims. The Debtors project their asbestos liability for defense and indemnity at somewhere between $133 million and $200 million (15 years) or $182.4 million and $291.5 million (through 2049) (Dana

---

[15] Although Dana claims without citation to any record or affidavit (Dana Brief at pp. 5-6) that the proposed order was circulated to counsel prior to its submission to the Bankruptcy Court, counsel to Mr. Valdez has no record of receiving the order prior to its filing with the Bankruptcy Court.

Brief at p. 8, fn. 18) and assert that "[o]ver the range of reasonable forecasts of Reorganized Dana's future asbestos-related liabilities, 50% or more of those liabilities will be promptly paid by Reorganized Dana's insurers, and the percentage increases as the liability increases." *Id.*, fn. 19. Thus, at best, the Debtors believe their insurance coverage will provide roughly $66.5 million to $145 million, not $1.5 billion, to pay asbestos claims.

Also, key to the Bankruptcy Court's feasibility determination was a finding of the amount of the Debtors' present and future asbestos liability. Because the Plan promised to pay all of those claims in full as they came due, determining the amount of the asbestos liability was essential to determining whether the Plan could be confirmed. Dr. Robin Cantor failed to account properly for asbestos claims currently on inactive court dockets. Yet, Chief Bankruptcy Judge Bernstein has told us that those asbestos claims are claims that must be dealt with in the bankruptcy case. The Bankruptcy Court found that it did not have to forecast the amount of present and future asbestos liabilities because, whatever the amount, Dana had sufficient insurance to pay the claims. Yet Dana's insurance is not limitless and, as even the Bankruptcy Court recognized, will not extend to all asbestos claims asserted against the Debtors (Rec. 30, pp. 23-24). In short, there is no basis, on this record, to find, as a matter of law, that the Dana Plan was feasible, and self-serving findings drafted by Dana and adopted by the Bankruptcy Court go far beyond the Bankruptcy Court's ruling and afford no independent explanation or rationale for ignoring testimony contrary to Dana's assertions.[16]

---

[16] This is not the first time recently that this Bankruptcy Court has relied to its detriment upon orders submitted by debtors. *See, e.g., In re Calpine Corp.*, 2007 WL 4326738 (S.D.N.Y. Nov. 21, 1007) (slip copy). In *Calpine*, this Bankruptcy Court entered an order submitted by the debtors that went beyond the relief requested by the debtors, beyond the briefing and beyond the court's own opinion. The District Court vacated the order. *Id.* at \*14. Nor is it the first time recently that this Bankruptcy Court has relied on an insufficient record. *See In re Spiegel, Inc.*, 2007 WL 2456626 (S.D.N.Y. August 22, 2007) (slip copy). In *Spiegel*, the Second Circuit remanded an order sustaining a claim objection so that more evidence could be taken. This Bankruptcy Court entered a new order sustaining the claim objection and stating that the record had been supplemented. The District court remanded and found that "Judge Lifland's statement that the parties had indeed supplemented the record is clear error" (*Id.* at \*16) and went

## IV.     THE SEPARATE CLASSIFICATION OF ASBESTOS CLAIMS WAS IMPROPER.

The Debtors' argument with respect to classification stretches the facts of this case and the law beyond the breaking point.  First, the Debtors argue that they "properly classified Asbestos Personal Injury Claims separately because holders of these claims are the <u>only</u> unsecured creditors who can properly look to $1.497 billion in insurance assets and, largely as a result thereof, could be reinstated under the Plan ...."  Dana Brief at p. 21 (emphasis in original). The legal flaws in this argument are detailed in Mr. Valdez's opening brief, but it also fails because it relies on a misrepresentation of the evidence.  The Bankruptcy Court, to the extent it addressed classification in its order, relied upon the testimony of John Heintz, Dana's insurance coverage counsel, who stated that the Debtors have insurance coverage "<u>largely</u> available to pay asbestos-related claims."  12/11/2007 Tr. at 145:20-21 (emphasis added), cited in Confirmation Order (Rec. 30, ¶ G.2).  The distinction between the Debtors' representation as to the insurance <u>only</u> being available to pay asbestos claims and the actual testimony that the insurance is <u>largely</u> available to pay asbestos claims demonstrates that the availability of insurance is not a sufficient basis to classify asbestos claims separately from other personal injury claims.

The Debtors' legal argument on classification is equally unavailing.  The Debtors suggest that legal justification for separate classification of asbestos claims can be found in four cases: *In re Armstrong World Indus., Inc.*, 348 B.R. 136 (D. Del. 2006)[17]; *UNARCO Bloomington*

---

on to rule that "the Bankruptcy Court violated the Second Circuit's mandate by ruling in favor of Spiegel and against Morgan on a record that the Second Circuit had already declared insufficient." *Id.* at 17.  Nor is this the first time recently that this Bankruptcy Court has stretched the bankruptcy laws to the detriment of asbestos claimants. *See In re Johns-Manville Corp.*, ___ F.3d ___, 2008 WL 399010 (2nd Cir. February 15, 2008).  In *Manville*, this Bankruptcy Court interpreted his plan confirmation order from 1986 to enjoin direct causes of action by individuals injured by asbestos against insurance companies.  The Second Circuit found that such an injunction would exceed the limits of bankruptcy court jurisdiction and reversed.  *Id.* at *11.

[17] The Debtors argue that the court in *Armstrong* approved separate classification of asbestos claims under the Bankruptcy Code without regard to section 524(g).  This is, at best, a strained reading of a single paragraph that also states:  "[M]oreover, section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code requires that the Plan establish a

---

*Factory Workers v. UNR Indus., Inc.*, 124 B.R. 268 (N.D. Ill. 1990); *In re Quigley Co.*, No. 04-15739 (SMB), 2007 WL 3077310 (Bankr. S.D.N.Y. Oct. 23, 2007) (Bernstein, C.J.); and *In re Kaiser Aluminum Corp.*, No. 092-10429 (JKF), 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006). However, three of these cases concern plans of reorganization that comply with 11 U.S.C. § 524(g) and the fourth, *UNARCO*, is one of the predecessor cases that led to the enactment of section 524(g).  *See* H. R. Rep. 103-835, 1994 U.S.C.C.A.N. 3340 *40-41 ("The Committee has approved [section 524(g)] of the bill in order to strengthen the Manville and UNR Trust/Injunction mechanism.").   Section 524(g) creates an entire set of separate confirmation standards for cases resolving a debtor's asbestos liability, including trust formation and funding requirements, provisions guiding payment of asbestos claims and, most importantly, that "a separate class or classes of claimants whose claims are to be addressed by a trust described in clause (i) is established and votes, by at least 75% of those voting, in favor of the Plan."    11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb).    For the Debtors to cite cases under 11 U.S.C. § 524(g) as legal justification for their purposeful disenfranchisement of asbestos claimants is disingenuous, at the very least.

## V.    THE DEBTORS FAIL THE "BEST INTEREST" TEST.

Dana insists that the best interest of creditors test set forth in 11 U.S.C. § 1129(a)(7) has no application to asbestos claimants because they are unimpaired by the Plan.  Dana argues that the standard would be satisfied in the event of impairment because the 100% recovery contemplated by the Plan is better than the 60% recovery projected for asbestos claimants in a chapter 7 liquidation.  Because, as shown, asbestos claimants are impaired by the Plan, Dana had the burden to demonstrate, by a preponderance of the evidence, that the Plan satisfies the "best

---

separate class or classes of the Claimants whose Claims are to be addressed by the Asbestos PI Trust."  *In re Armstrong World Indus., Inc.*, *Id.* at 160.

interest" test set forth in section 1129(a)(7)) with respect to the claims of asbestos victims. *In re Adelphia Communications Corp.,* 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2001). Although Dana failed to meet this burden, the Bankruptcy Court summarily adopted the Debtor's order as "supported by the record" and stated that "I would also find that the plan is feasible, fair and reasonable, and does meet the best interest test." 12/12/2007 Tr. at 94:25-95:6. Specifically addressing asbestos claimants in the Confirmation Order, the Bankruptcy Court also found, "Even were the holders of Class 3 Asbestos Personal Injury Claims entitled to the protections of section 1129(a)(7) of the Bankruptcy Code, that section would be satisfied with respect to such holders." (Rec. 30, at 13).[18]

To meet its burden, the Debtors were required to demonstrate that the Plan satisfies the best interest test by providing evidence that, among the class of asbestos claimants:

> ***Each holder*** of a claim or interest of such class –
>
> * * *
>
> will receive or retain under the plan on account of such claim or interest property of a value, ***as of the effective date of the plan***, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1129(a)(7) (emphasis added).

However, in this case, asbestos claimants received no property on account of their class as of the Effective Date of the Plan. The Debtors argue that payment of claims on the Effective Date would provide these creditors an inappropriate windfall because they are unliquidated.

---

[18] As stated in the Confirmation Order, the Court based its finding upon: a liquidation analysis that does not address asbestos claims, portions of the Plan compliance declaration submitted by the Debtors that address asbestos claims only in reference to their being added to the pool of general unsecured creditors in a chapter 7 liquidation, and the testimony of Ted Stenger that, in the event of a chapter 7 liquidation, asbestos claimants would still enjoy the same insurance recoveries (estimated by the Debtors to be 50% of claim amounts) and would receive an additional 6.9% on account of their claims. (12/10/2007 Tr. 183:18-185:22). (Rec. 30, at 13). The Court made no specific finding of the value of property received or retained by each asbestos claimant on the Effective Date.

(Dana Brief, pp. 17-18).  The Debtors ignore the fact that unsecured creditors with unliquidated claims may not be entitled to payment, but <u>are</u> entitled to the "windfall" of a specific reserve of their potential distribution, pending resolution of their claims.  The Debtors' other unliquidated, unsecured creditors received this treatment.  (Rec. 2, Art. VI.E).

Although Mr. Stenger testified that asbestos claimants could recover "well over one hundred percent" on their claims (12/10/2007 Tr. at 185:19-20), the Plan provides no mechanism to assure that recovery in the event that the assets of Dana Companies LLC prove to be insufficient.  Instead, with only limited non-operating assets dedicated to pay such claims, asbestos claimants must engage in the very race to the courthouse that bankruptcy process is intended to prevent.  *See In re Shea and Gold,* 214 B.R. 739, 750 (Bankr. S.D.N.Y. 1997) (granting motion to dismiss bankruptcy after 19 months of administration "would result in a 'race to the courthouse' and the inequitable distribution, if any, among like creditors. That is precisely what the Bankruptcy Code seeks to prevent.").

The Plan puts those claimants whose recovery may be delayed (*i.e.*, those asbestos claimants whose claims may be tied up for years in the appellate process, or who possess claims, the validity of which was expressly recognized in *Quigley*, that cannot be presently pursued in state court) at risk that no funds, other than insurance, will be available to pay their claims once finally adjudicated.  For these creditors, the 100% recovery promised by Mr. Stenger is illusory and their interests would be better served by a chapter 7 liquidation.  Because the Bankruptcy Court could not, based upon the evidence provided, determine that each asbestos claimant would recover at least as much under the Plan as he or she would recover in a chapter 7 liquidation, the Bankruptcy Court's finding that the Plan satisfied the requirements of section 1129(a)(7) was clearly erroneous.

## <u>CONCLUSION</u>

This Court has the opportunity to let the asbestos claimants be heard. Over 130,000 claimants were not allowed to vote on a plan that substantially changed their ability to collect their claims from Dana. Mr. Valdez, the voice of those asbestos claimants, was silenced during the Confirmation Hearing. Dana comes to this Court invoking equity and requests that asbestos claimants be silenced once again. The Bankruptcy Code demanded more of the Bankruptcy Court. Justice and fairness demand that the asbestos claimants be heard by this Court. For all the foregoing reasons, Jose Angel Valdez, respectfully requests that this court deny Dana's motion to dismiss this appeal, vacate the Confirmation Order or, alternatively, remand the case for modification by the Bankruptcy Court, and grant such other relief as is equitable and just.

Dated:  March 28, 2008

Respectfully submitted,

JOSÉ ANGEL VALDEZ

By:    */s/ Alan Eric Gamza*_____
         One of his attorneys

Joseph D. Frank (JF 6085)
FRANK/GECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois  60610
(312) 276-1400 – telephone
(312) 276-0035 – facsimile
jfrank@fgllp.com

Alan Eric Gamza
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York  10174-1299
Phone: (212)554-7400
Fax:    (212) 554-7700
agamza@mosessinger.com

COUNSEL FOR JOSÉ ANGEL VALDEZ

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------x

**In re**

**DANA CORPORATION,** *et al.*                          **Bankruptcy Case No. 06-10354(BRL)**
                                                         **Jointly Administered**


                              **Debtors**
---------------------------------------------------------x
**AD HOC COMMITTEE OF ASBESTOS**
**PERSONAL INJURY CLAIMANTS and**
**JOSÉ ANGEL VALDEZ,**

                                                         **1:08-CV-1037 (PAC)**
                              **APPELLANTS**
                                                         **Judge Paul A. Crotty**

        **v.**

**DANA CORPORATION,** *et al.*,

                              **APPELLEES.**

---------------------------------------------------------x

<u>**AFFIDAVIT OF SERVICE**</u>

**TO THE CLERK, THE UNITED STATES DISTRICT COURT:**

        I, Don Kick, being duly sworn, depose and say: affiant is not party to the action, is over 21 years of age and resides in Farmingdale, New York.

        On March 28, 2008, affiant caused an exact copy of the **Reply Brief of Appellant José Angel Valdez and Response to Motion of Appellees to Dismiss as Moot Consolidated Appeals** to be served Via E-mail and First Class Mail s on the following parties at their designated addresses for such service on the attached Service List.


                                                 _____/s/ Don K. Kick_____
                                                         Don K. Kick

Sworn to before me this
28th day of March, 2008


 __/s/ Marie S. Leybag_____
**Marie S. Leybag**
Notary Public, State of New York
No. 01LE5060744
Qualified in Queens County
Commission Expires May 20, 2010

Service List

Douglas T. Tabachnik, Esq.
Law Offices of Douglas T. Tabachnik
Suite C
Woodhull House
Freehold, NJ  07728
dtabachnik@dttlaw.com


Corinne Ball, Esq.
Steven C. Bennett, Esq.
Heather Lennox, Esq.
Jones Day (NYC)
222 East 41st Street
New York, NY 10017
cball@jonesday.com
scbennett@jonesday.com
hlennox@jonesday.com


Sander Esserman, Esq.
Robert T. Brousseau, Esq.
Jo E. Hartwick, Esq.
Stutzman, Bromberg, Esserman & Plifka, P.C.
2323 Bryan Street
Suite 2200
Dallas, TX 75201-2689
esserman@sbep-law.com
brousseau@sbep-law.com
hartwick@sbep-law.com