JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Corinne Ball (CB 8203)
Steven C. Bennett (SB 2746)
Heather Lennox (HL 3046)
Robert W. Hamilton (RH 3130)

Attorneys for Appellees Dana Corporation, *et al.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| DANA CORPORATION, *et al.*, | Bankruptcy Case No. 06-10354 (BRL) |
| Debtors. | Jointly Administered |
| AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS and JOSÉ ANGEL VALDEZ, | |
| Appellants, | No. 1:08-CV-1037 (PAC) |
| vs. | Judge Paul A. Crotty |
| DANA CORPORATION, *et al.* | |
| Appellees. | |

**APPELLEES' BRIEF IN RESPONSE TO APPELLANTS'
SUPPLEMENTAL BRIEF REGARDING BANKRUPTCY
COURT'S ALLEGED LACK OF SUBJECT MATTER JURISDICTION
TO ENJOIN CERTAIN ACTIONS AGAINST NON-DEBTOR ENTITIES**

CLI-1614297v8

Appellee Dana Corporation and the other above-captioned Reorganized Debtors respectfully submit this brief in response to the Appellants' Supplemental Brief Regarding Bankruptcy Court's Lack of Subject Matter Jurisdiction to Enjoin Certain Actions Against Non-Debtor Entities (Docket No. 30) (together with the Ad Hoc Committee's initial suggestion of lack of subject matter jurisdiction (Docket No. 28), the "Ad Hoc Submissions").

## PRELIMINARY STATEMENT

The Ad Hoc Committee alleges that, in light of the recent decision of the Second Circuit in Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.), 517 F.3d 52 (2d Cir. 2008), the Bankruptcy Court lacked subject matter jurisdiction to enter the injunction set forth at paragraph 20 of the Confirmation Order (the "Injunction").  Based upon this alleged jurisdictional shortcoming, the Ad Hoc Committee seeks vacatur of the Confirmation Order.  The Ad Hoc Committee is not entitled to an order granting such relief.

*First*, the Bankruptcy Court had exclusive subject matter jurisdiction to determine the legality of the Plan's disposition of the property of the Debtors' estates.  The Bankruptcy Court therefore had the authority to issue an injunction preventing any challenge of that disposition in subsequent collateral actions.  Neither Manville nor In re Zale Corp., 62 F.3d 746 (5th Cir. 1995), suggest anything to the contrary.

*Second*, even if there were some question as to the Bankruptcy Court's jurisdiction to enter the Injunction (which there is not), the Ad Hoc Committee lacks the standing to challenge the Bankruptcy Court's authority where the Asbestos Personal Injury Claimants it represents are wholly unaffected by the Injunction.

*Third*, in light of the substantial consummation of the Plan, the Ad Hoc Submissions should be deemed equitably moot for the same reasons (outlined in Appellees' prior submissions to the Court (collectively, "Appellees' Submissions")) that the underlying Consolidated Appeal is

equitably moot. Where a court cannot order effective relief (such as the requested vacatur of the Confirmation Order), appellate challenges of a bankruptcy court's subject matter jurisdiction are as vulnerable to dismissal on grounds of equitable mootness as challenges unrelated to jurisdiction.

I.   **THE BANKRUPTCY COURT POSSESSED SUBJECT MATTER JURISDICTION TO ENTER THE INJUNCTION**

Section 1334(e) of title 28 of the United States Code provides that "[t]he district court . . . shall have exclusive jurisdiction . . . of all of the property, wherever located, of the debtor . . . and of property of the estate." 28 U.S.C. § 1334(e); see also Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York (the "Standing Order"), dated July 10, 1984 (Ward, Acting C.J.). Section 1123(a)(5)(B) of the Bankruptcy Code requires that "a plan shall . . . provide adequate means for the plan's implementation, such as . . . transfer of all or any part of the property of the estate to one or more entities, whether organized before or after confirmation of such plan." 11 U.S.C. § 1123(a)(5)(B). In light of these statutory provisions, it is apparent that the Bankruptcy Court possessed subject matter jurisdiction (indeed, *exclusive* subject matter jurisdiction) to determine whether the Plan lawfully transferred the property of the Debtors' estates to the Reorganized Debtors pursuant to the Restructuring Transactions, and there can be no genuine, good-faith argument to the contrary. See, e.g., Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 89 (2d Cir. 1997) (stating that providing the means for implementation of a plan pursuant to section 1123(a)(5) of the Bankruptcy Code is "within [a bankruptcy court's] competent jurisdiction.").

Exclusive jurisdiction to determine the legality of transfers of property of the estate to newly-formed entities pursuant to a plan of reorganization necessarily implies the complementary authority to enjoin subsequent collateral actions challenging such transfers. Thus, having determined the legality of the Restructuring Transactions (with specific reference

to the threat of fraudulent transfer liability on the part of the Reorganized Debtors),[1] the Bankruptcy Court then took the non-controversial step — taken by innumerable bankruptcy courts in nearly every large chapter 11 bankruptcy case[2] — of enforcing those determinations pursuant to the Injunction (which applies *only* to actions taken in connection with the Debtors' restructuring — broadly speaking, the Plan).

Contrary to the Ad Hoc Committee's suggestions, neither Manville nor Zale address the exclusive subject matter jurisdiction of a bankruptcy court to make such determinations or enter such injunctions in the context of plan confirmation. The holdings in both Manville and Zale are limited to the jurisdiction of a bankruptcy court to enjoin the claims of creditors against non-debtors where those claims seek to recover *assets that were never property of the estate*.[3] Nothing in either case suggests that the standard formulation of the breadth of a bankruptcy court's subject matter jurisdiction would exclude the entry of an injunction related to claims

---

[1]  Specifically, the Confirmation Order found:

> The Restructuring Transactions have not been entered into fraudulently, nor with the intent to hinder, delay or defraud any entity to which the Debtors or Reorganized Debtors are, or may become, indebted on or after the Effective Date . . . . Pursuant to Article V of the Plan and Exhibit V.B.1 to the Plan, the transfer of assets to the Operating Subsidiaries and the assumption of certain Liabilities of Debtor Dana Corporation by the Operating Subsidiaries in exchange for the shares of New Dana Holdco Common Stock to be distributed to the creditors of Dana Corporation is a transfer for fair value and fair consideration inasmuch as Dana Corporation will be transferring more liabilities than assets to New Dana Holdco . . . . After such transfers, New Dana Holdco, the Operating Subsidiaries, Reorganized Dana Corporation and each of the other Reorganized Debtors will be solvent and left with sufficient assets, liquidity and capital to satisfy their obligations as they come due for the foreseeable future.

Confirmation Order, at ¶ W.

[2]  See, e.g., In re Northwest Airlines Corp., Case No. 05-17930 (ALG) (Bankr. S.D.N.Y. May 18, 2007), at ¶ 33 (enjoining non-debtors from pursuing reorganized debtors for claims arising out of the administration and restructuring of the debtors' estates under the Plan); In re Delta Air Lines, Inc., Case No. 05-17923 (ASH) (Bankr. S.D.N.Y. Apr. 25, 2007), at ¶ 83 (enjoining non-debtors from pursuing reorganized debtors for claims arising out of "the administration of the Plan or the property to be distributed under the Plan"); In re Owens-Corning, Case No. 00-03837 (JKF) (Bankr. D. Del. Sep. 26, 2006), at ¶ L (same).

[3]  See Manville, 517 F.3d at 63 (stating that plaintiffs sought to recover from assets of non-debtor insurer, which assets had never been property of the estate and were not administered pursuant to debtor's plan of reorganization); Zale, 62 F.3d at 755 (same).

*arising directly out of the administration of estate property pursuant to section 1123(a)(5)(B) of the Bankruptcy Code.*[4]

The Ad Hoc Committee is simply in error when it asserts that fraudulent transfer actions challenging the Restructuring Transactions "will not impair the assets of the Debtors' bankruptcy estates." (Ad Hoc Brief at 5.) The fraudulent transfer actions threatened by the Ad Hoc Committee would represent direct collateral challenges to the Bankruptcy Court's jurisdiction to determine the legality of the Plan's disposition of the property of the Debtors' estates by way of the Restructuring Transactions. Indeed, this determination was not only within the jurisdiction of the Bankruptcy Court, it was within the *exclusive* jurisdiction of that court; no state court possesses the jurisdiction to adjudicate the legality of the Restructuring Transactions. Accordingly, there is simply no merit to the Ad Hoc Committee's suggestion that the Bankruptcy Court lacked jurisdiction to enter the Injunction, since the Injunction is a proper exercise of the Bankruptcy Court's equitable power to protect its exclusive jurisdiction and its holdings from improper collateral attacks.

Because the Bankruptcy Court possessed exclusive subject matter jurisdiction to determine the legality of the Restructuring Transactions pursuant to 28 U.S.C. § 1334(e), the Standing Order and section 1123(a)(5)(B) of the Bankruptcy Code, and thus to enter the Injunction, the Ad Hoc Submissions should be rejected.

---

[4] See Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (determining that bankruptcy court has jurisdiction over any action where "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . *in any way impacts upon the handling and administration of the bankrupt estate*.") (emphasis added); see also Publicker Indus., Inc. v. U.S. (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992) (adopting Pacor standard and holding that jurisdiction was clearly present where "claims bring into question the very distribution of the estate's property"); Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp., 198 B.R. 55, 60 (S.D.N.Y. 1996) ("The standard test for determining whether a civil proceeding is related to a bankruptcy case is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Thus, the proceeding need not necessarily be against the debtor or against the debtor's property*.") (emphasis added) (quotation omitted).

## II. THE AD HOC COMMITTEE LACKS STANDING TO CHALLENGE THE INJUNCTION ENTERED BY THE BANKRUPTCY COURT

Even if <u>Manville</u> or <u>Zale</u> could be read to suggest that the Bankruptcy Court lacked subject matter jurisdiction to enter the Injunction (which they cannot), the court should not adjudicate the issue where (A) Asbestos Personal Injury Claimants are wholly unaffected by the Injunction and (B) the Ad Hoc Committee, therefore, lacks standing.

As Appellees have repeatedly stated on the record, the Plan and Confirmation Order were never intended to enjoin any actions that could be brought by Asbestos Personal Injury Claimants (including any state law fraudulent transfer actions related to the Restructuring Transactions). Appellees succinctly stated their understanding of the scope of the Injunction in Appellees' Opening Brief: "Appellants are specifically carved out of the Plan's injunction and release provisions; they can sue any entity at any time for any reason."[5] Accordingly, even though Appellees believe that a state fraudulent conveyance action would not succeed for (among others) the reasons set forth in Section I above, the Asbestos Personal Injury Claimants represented by the Ad Hoc Committee are completely unaffected by the Injunction and are free to bring such an action if they wish.

Where the Injunction does not affect the rights of, or injure, Asbestos Personal Injury Claimants, the Ad Hoc Committee lacks standing to challenge the subject matter jurisdiction of the Bankruptcy Court to enter the Injunction on appeal. <u>See</u>, e.g., <u>60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities, Inc.)</u>, 218 F.3d 109, 116 (2d Cir. 2000) ("To have standing to

---

[5]   Appellees' Opening Brief, at 19. The Debtors' intent to remove all claims and causes of action of the Asbestos Personal Injury Claimants (including state law fraudulent conveyance actions) from the scope of the Injunction is further evidenced by Section IV.E.6.b of the Plan, which carves "any Liability arising from or related to Asbestos Personal Injury Claims" out from the general release by holders of claims under the Plan (and, therefore, from the Injunction). The Plan's use of the phrase "with respect to their Asbestos Personal Injury Claims" in Section IV.E.5.c may not be as clear as the "related to Asbestos Personal Injury Claims" language in Section IV.E.6.b of the Plan, but the Debtors and Reorganized Debtors have made clear their intent, throughout the record.

appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court.") (citation and quotation omitted); see also In re Memorial Estates, Inc., 950 F.2d 1364, 1369 n.10 (7th Cir. 1991) (noting that party unaffected by court rulings lacked standing to challenge court's jurisdiction to enter such rulings on appeal).  As described above, Asbestos Personal Injury Claimants are not affected by the Injunction at all, much less "directly and adversely affected pecuniarily."  Thus, the Ad Hoc Committee lacks the requisite standing to challenge the Bankruptcy Court's jurisdiction to enter the Injunction; accordingly, the Court should refuse to adjudicate the issue.

### III. THE AD HOC SUBMISSIONS SHOULD BE REJECTED AS EQUITABLY MOOT

As set forth in Appellees' Submissions, in light of (A) the substantial consumation of the Plan and (B) the Appellants' inability to rebut the presumption of equitable mootness, the Consolidated Appeal must be dismissed as equitably moot.  Appellate challenges of a bankruptcy court's jurisdiction — such as the Ad Hoc Submissions here — are similarly subject to dismissal on equitable mootness grounds.  Accordingly, for the reasons set forth below and in Appellees' Submissions, the Ad Hoc Committee's jurisdictional challenge should be rejected as equitably moot.

In Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.), 177 B.R. 791 (S.D.N.Y.), aff'd, 68 F.3d 26 (2d Cir. 1995), the District Court held that an appellate challenge of a bankruptcy court's jurisdiction is subject to dismissal on grounds of equitable mootness.  The facts of Best Products were strikingly similar to the facts of this Consolidated Appeal:  (A) the appellant objected to confirmation and was overruled by the bankruptcy court; (B) the appellant failed to seek a stay of the confirmation order pending its appeal; (C) the debtor's plan was substantially consummated; and (D) the debtor moved to dismiss the appeal of the confirmation

order as equitably moot. Best Products, 177 B.R. at 792-93. The appellant argued that the confirmation order exceeded the bankruptcy court's subject matter jurisdiction by purporting to enforce certain subordination agreements between creditors. Id. at 800. The appellant further argued that "[w]here an issue exists as to whether a lower court has subject matter jurisdiction, such issue cannot become moot on appeal and can always be raised on appeal." Id. at 807.

The District Court rejected the appellant's argument and dismissed its jurisdictional challenge — along with the rest of the appeal — as equitably moot. The District Court provided three primary reasons supporting its decision to dismiss: (A) the appellant had offered no precedent establishing that a district court was required to entertain an appeal for lack of jurisdiction "despite the mootness doctrine of [Frito-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944 (2d Cir. 1993)];" (B) numerous "[c]ases presenting analogous challenges to jurisdiction have been dismissed based on mootness;" and (C) because the District Court could not "restore the parties to the pre-confirmation status quo," any ruling on the merits of the appeal — including any ruling on the jurisdictional issues presented — "would be purely advisory." Id. at 808; see also Kassover v. Gibson, No. 02 Civ. 7978, 2003 WL 21222341, at *2 n.1 (S.D.N.Y. May 27, 2003) (stating that "[c]ontrary to appellant's contention, this Court notes that appellant's jurisdictional argument can be dismissed for mootness.") (citing Best Products).

As in Best Products, and as set forth at length in Appellees' Submissions, the Debtors' Plan has been substantially consummated. Thus, as found by the District Court in Best Products, any opinion from the Court with respect to the Bankruptcy Court's jurisdiction would be purely advisory and improper. Moreover, similar to Best Products, the Bankruptcy Court made specific findings of fact with respect to the centrality of the Injunction to the Debtors' reorganization and

the successful implementation of the Plan.[6] Under such circumstances, the presumption of equitable mootness cannot be overcome, and the Ad Hoc Committee's jurisdictional challenge to the Confirmation Order should be rejected.

## CONCLUSION

For the foregoing reasons, Appellees respectfully submit that the Ad Hoc Committee's challenge of the Bankruptcy Court's subject matter jurisdiction to enter the Injunction is legally in error, equitably moot and should be rejected by this Court.

Dated: May 16, 2008  
       New York, New York

Respectfully submitted,

  s/Corinne Ball  
JONES DAY  
222 East 41st Street  
New York, New York  10017  
Telephone:  (212) 326-3939  
Facsimile:  (212) 755-7306  
Corinne Ball (CB 8203)  
Steven C. Bennett (SB 2746)  
Heather Lennox (HL 3046)  
Robert W. Hamilton (RH 3130)

ATTORNEYS FOR APPELLEES

---

[6] See Confirmation Order, at ¶ AA ("Further, each non-Debtor party that will benefit from the releases, exculpations and related injunctions set forth in, among others, Sections IV.E.5, IV.E.6 and IV.E.7 of the Plan (collectively, the "Plan Releases") either shares an identity of interest with the Debtors, was instrumental to the successful prosecution of the Chapter 11 Cases and/or provided substantial consideration to the Debtors, which value will allow for distributions that would not otherwise be available but for the contributions made by such non-Debtor parties.  The Plan Releases are, individually and collectively, integral to, and necessary for the successful implementation of, the Plan, essential to the Debtors' reorganization and supported by reasonable consideration."); Best Products, 177 B.R. at 807 (noting that allegedly jurisdictionally infirm provisions of the confirmation order were "integral to the Plan").